THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JAMES STUCKEY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 78-874

Opinion filed November 21, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Pamela Louise Gray, and Diane Michael Powell, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Richard D. Kharas, of counsel), for appellee James Stuckey.

Donald T. Bertucci, of Chicago, for appellee Michael Harris.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendants James Stuckey and Michael Harris were charged with attempt murder and armed robbery. (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4(a) and 18—2.) After a pretrial hearing the court quashed the arrests and suppressed both lineup and photographic identification testimony. The court also barred the in-court identification testimony of Donna Prack as a sanction for alleged police misconduct. However, the court denied defense motions to suppress in-court identification testimony of Ramon DelReal, Filiberto Meza and Maria Kelso. The State appeals pursuant to Supreme Court Rule 604. (Ill. Rev. Stat. 1975, ch. 110A, par. 604.) The issues presented for review are whether the arrests were based on probable cause, and whether the court's ruling barring the in-court identification testimony of Donna Prack constituted an abuse of discretion.

At the hearing on the motion to quash the arrests and suppress identification testimony, Officer Joseph Kirchens testified that about 9 p.m. on December 17, 1976, he investigated a robbery at the Say Mac Tap at 856 West 122nd Street in Chicago. He obtained descriptions of two men and also obtained information that three youths had almost been struck by a blue, 1976 AMC Pacer occupied by two men, as it sped away from the area of the tavern about the time of the robbery. After touring the area, Kirchens found a car matching the description parked three blocks north of the Say Mac Tap, and the youths identified it.

While observing the blue Pacer, Officer Kirchens saw Michael Harris and Tyrone Feemster park next to the Pacer and walk toward the Party Time Lounge, which was just around the corner. At that time several marked squad cars arrived with their lights and sirens activated. Kirchens asked the newly arrived officers what was happening, and he was told they were responding to a robbery at the Party Time Lounge. Then Harris and Feemster walked back toward Kirchens from the direction of the Party Time Lounge and he stopped them. Stuckey was stopped as he left the lounge. Kirchens asked them who owned the Pacer, and Stuckey said it belonged to a man named Sam, who was in the tavern. Kirchens asked other police officers to hold the men while he went into the tavern.

Kirchens inquired of the owner of the Party Time Lounge what had happened there and was told of the robbery by two males. During the robbery everyone had been on the floor except for James Stuckey, who was sitting on the jukebox with his hands in the air. The owner said that Stuckey reacted during the course of the robbery as if it did not concern him. After the robbery, Stuckey told the owner he would tell him the identities of the two robbers for $100.

James Stuckey testified that at 10:35 p.m. on December 17, 1976, he was approached by a police officer as he left the Party Time Lounge, and he was not in violation of any law. After being searched and handcuffed, he was taken to a police station and placed in a lineup.

Michael Harris testified that at 10:30 p.m. on December 17, 1976, he and Tyrone Feemster were stopped by police officers as they were entering the Party Time Lounge. They were searched along with James Stuckey, who had come out of the Party Time Lounge. Harris testified the police took his car keys and looked through his car. He and Feemster were then taken to the police station and placed in a lineup.

Officer Frank Sadler of the Chicago Police Department testified that while investigating the robbery of the Say Mac Tap, he had shown books of photographs to approximately 20 victims of the robbery, including Donna Prack and Ramon DelReal. Prack identified both Stuckey and Harris, and DelReal identified Stuckey. After Harris was identified in a lineup by Prack and DelReal, his photograph was placed in a packet with nine others and exhibited to other witnesses for identification. Maria Kelso and Filiberto Meza, who had been shot during the robbery of the Say Mac Tap, each identified Michael Harris from those photographs.

The court quashed the arrests and suppressed the lineup identification testimony as well as the photographic identifications.

At a hearing on a motion to suppress in-court identification testimony, Donna Prack testified she was at the Say Mac Tap on December 17, 1976, when two men, whom she had seen before on several occasions, came in about 8 p.m. She told police officers she had seen the robbers before, but she did not remember until later that she had seen them at the company where her boyfriend worked. She knew the last name of one of them was Harris. They remained less than 5 minutes and left.

About 45 minutes later, the same two men returned and committed the robbery which lasted about 6 minutes. She was able to see their faces from close range under good lighting conditions. She was able to describe both men and their clothing with particularity.

While at the police station, she looked through photo books for about 3 minutes and picked out two photographs that "resembled" the robbers, but she did not know whether they were the same people. About 12

people were looking at the photographs at the same time she did, and a majority of them picked out the same two pictures as resembling the robbers. At about 3 a.m., she viewed a lineup and picked out both Stuckey and Harris.

Ramon DelReal testified that the tavern was well lighted during the robbery which lasted about 5 minutes. While at the police station he looked at photo books, along with several other people, but he did not pick out anyone he believed committed the robbery. Thereafter, he twice viewed a lineup and on each occasion picked out the same person.

Filiberto Meza testified that he was shot during the robbery. While in the hospital he selected one photograph from a group of 10 as being one of the robbers. Maria Kelso testified she was working in the tavern on the night of the robbery. She saw both robbers but only remembered one. She was shot in the forehead but remained conscious and was able to see. Several days after the robbery, the police showed her several photographs and she recognized the man who shot her.

The court denied the motions to suppress the in-court identification testimony of Meza, Kelso and DelReal, but barred the in-court identification testimony of Donna Prack because, during the hearing, it was discovered that the two photographs which she and several others had picked out as resembling the robbers could not be found. The court relied on *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and stated that the defense had been prejudiced because it had been precluded from the possibility of showing a lack of resemblance between the pictures selected and defendants. The court further stated that whether the misconduct was deliberate or accidental was not relevant because to allow the witness to testify would be to condone the police behavior, and there would be no reason for a policeman not to do the same thing in the future.

■■ The State first appeals from the court's ruling quashing the arrests and suppressing photographic and lineup identifications. The State argues that, although there was no initial probable cause to arrest defendants, they were properly stopped pursuant to section 107—14 of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 107—14), which provides that a peace officer may stop a person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed an offense. Such a stop by police requires only the ability to point to specific and articulable facts which, when taken together with rational inferences from these facts, reasonably justifies the stop. *People v. Basiak* (1977), 50 Ill. App. 3d 155, 157, 365 N.E.2d 570.

The State contends that the investigatory stop was justified in light of the advantage to be gained from questioning people in the area soon after

a crime. The State concludes that the totality of the facts and circumstances known to the officers after questioning defendants provided probable cause for the arrests.

■ On appeal of the determination rendered concerning the motion to suppress, the State has the burden of demonstrating that the ruling of the trial court was manifestly erroneous. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681; *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) It appears that the only information which the police officers received after stopping defendants was that Stuckey was unconcerned during the robbery at the Party Time Lounge and offered to identify the two robbers to the bartender for $100. He also knew who owned the blue Pacer. This information does not constitute probable cause, because it is unlikely that Stuckey would offer to identify his confederates were he actually involved in the robbery of the Party Time Lounge. Mere knowledge of the ownership of the Pacer is clearly not incriminating. Harris was not implicated in either robbery at that time, because he arrived at the Party Time Lounge at the same time as the police who were responding to the robbery. Thus, the totality of the facts and circumstances support the judgment of the trial court in quashing the arrests and suppressing the photographic identifications and lineup identifications which were products of the illegal arrests. An illegal arrest does not, *per se,* render an identification inadmissible, and the test to be applied is whether the evidence to which objection is made resulted from an exploitation of the illegality or by means sufficiently distinguishable to be purged of the primary taint. (*People v. Faulisi* (1977), 51 Ill. App. 3d 529, 533-34, 366 N.E.2d 1072.) In *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, the United States Supreme Court stated that the attenuation of unconstitutional arrests would be considered in the light of any intervening circumstances and in particular in light of the purpose and flagrancy of the official misconduct. (Also see *Dunaway v. New York* (1979), ___U.S.___, 60 L. Ed. 2d 824, 99 S. Ct. 2248.) In this case the photographic and lineup identifications appear to be a direct result of the arrests which were not supported by probable cause.

The State next argues that it was error to suppress the in-court identification testimony of Donna Prack as a sanction for the police having failed to retain two photographs.[1] However, defendant Stuckey contends that the court's ruling was not properly appealable by the State pursuant to Supreme Court Rule (a) (1) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)) because that rule does not apply to orders suppressing evidence as a sanction. This appears to be a question of first impression. In *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 349 N.E.2d 16, our supreme court

---

[1] Defendants do not challenge the trial court's ruling that the potential in-court identification testimony of the witnesses is independent of the illegal arrests.

made it clear that Supreme Court Rule 604(a) applies to pretrial rulings suppressing evidence under the exclusionary rule in order to deter future deprivations of an individual's constitutional rights and did not apply to evidentiary rulings at trial. In *People v. Jackson* (1979), 67 Ill. App. 3d 24, 384 N.E.2d 591, the court ruled that an order striking and excluding identification testimony tainted by suggestive police procedures was not an order "suppressing evidence" within the meaning of Rule 604(a)(1). The court held that only orders of suppression entered pursuant to sections 114—11 and 114—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, pars. 114—11 and 114—12) which provide for the suppression of illegally obtained confessions and the products of illegal searches are appealable under Rule 604(a)(1). The rationale of the court was that testimony identifying an accused, when tainted by unduly suggestive procedures, was rejected as an aid in the truth-seeking process because of unreliability rather than being a deterrent to future deprivations of the individual's rights.

In this case the evidence suppressed does not fall under sections 114—11 or 114—12, but it was the result of a pretrial ruling intended to deter future police conduct rather than an evidentiary ruling made during trial of the type contemplated in *Van De Rostyne* and *Jackson.* We therefore find that the order was appealable by the State pursuant to Supreme Court Rule 604(a)(1).

With respect to the merits of the court's ruling, defendants rely on *Brady v. Maryland,* and on Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412) which require disclosure to the accused of certain enumerated materials, including photographs, in the possession of the State as well as any materials or information which tend to negate the guilt of the accused as authority for the State's duty to disclose the photographs. Defendants also rely on Supreme Court Rule 415(g)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 415(g)(1)) which provides that upon failure to comply with discovery rules the court may exclude such evidence or "enter such other order as it deems just under the circumstances" as authority for the court's action in barring the testimony of Donna Prack.

It is also clear that a trial court has inherent authority to insure the defendant a fair trial, and it may impose sanctions, including the dismissal of the indictment. *People v. Lawson* (1977), 67 Ill. 2d 449, 456, 367 N.E.2d 1244; *People v. Melson* (1977), 49 Ill. App. 3d 50, 52, 363 N.E.2d 881; *People v. Endress* (1969), 106 Ill. App. 2d 217, 223, 245 N.E.2d 26.

However, the exclusion of evidence is not favored because it does not contribute to a goal of truth seeking, and the purpose of sanctions should be to compel discovery rather than to punish. (*People v. Jackson* (1977), 48 Ill. App. 3d 769, 771, 363 N.E.2d 932; *People v. Petru* (1977), 52 Ill. App. 3d 676, 678-79, 367 N.E.2d 980.) Although the trial court has

discretion to impose an appropriate sanction, an abuse of discretion may constitute reversible error. (*People v. Jackson.*) In *United States v. Agurs* (1976), 427 U.S. 97, 108, 49 L. Ed. 2d 342, 96 S. Ct. 2392, the court held that the prosecution's duty of disclosure was not violated unless the omission was of significance and resulted in denial of defendant's right to a fair trial. Similarly, in *People v. Holdman* (1979), 76 Ill. App. 3d 518, 395 N.E.2d 72, we held that the negligent destruction of evidence by the State will not be grounds for reversal where the defendants have not been prejudiced.

■ Here, the loss of the photographs is not prejudicial to defendants. Donna Prack did not testify that the photographs selected were those of the robbers, but that they merely "resembled" them. We also find that Prack's in-court identification was independent of the selection of the photographs, and no prejudice could have resulted to defendants. (*People v. Camel* (1973), 10 Ill. App. 3d 1022, 1027, 295 N.E.2d 270.) Additionally, defense counsel can accomplish its impeachment by eliciting the facts that the police report indicates that no photographic identification of defendants was made at the police station, and it can be inferred that the photographs selected were not those of defendants.

We also note that the holding in *Brady v. Maryland* and the supreme court discovery rules relied on by defendants apply to the suppression by the prosecution of evidence favorable to the accused upon request. But in this case the evidence in question was apparently lost by the police prior to the inception of the prosecution, and there is no showing that it was favorable to defendants. We therefore find the trial court abused its discretion in barring Donna Prack's testimony.

For these reasons the order quashing the arrests and suppressing lineup and photographic identification evidence is affirmed, and the order barring Donna Prack's in-court identification is reversed, and the cause is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.

JOHNSON and ROMITI, JJ., concur.