THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. AGAPITO SANCHEZ, Defendant-Appellee.

First District (1st Division)   No. 1—88—0754

Opinion filed December 4, 1989.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Edward Pacer, and LaCoulton Walls, Assistant State's Attorneys, of counsel), for the People.

Thomas A. Gibbons, of Mitchell D. Kreiter & Associates, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

The defendant, Agapito Sanchez, was charged by information with possession of a controlled substance with intent to deliver. The defendant moved to suppress the evidence seized, and the trial court sustained defendant's motion. The State appeals from the order granting defendant's motion to suppress.

On appeal, the State argues that the trial court erred in suppressing the State's evidence and ruling that the search was overly broad where the premises where the evidence was seized was next to and shared a common wall with the building for which the police officers had a valid search warrant and where the defendant had knocked part of the wall down to create a passageway between the two buildings.

At the hearing on the motion to suppress, Chicago police officer Jose Martinez testified that he was assigned to the gang crimes unit, and on February 23, 1986, he joined eight other police officers in executing a search warrant. The warrant authorized him to search a person and a building, specifically reciting "M/BH known as Pigwi 40 yrs. 5'6" 125 lbs Blk Hair Mustache & Beard and 4844 W. North Ave. (North Ave. Auto Repair) Chicago, Illinois, Cook County." Upon arriv-

ing at the premises, the officers forced the door open in order to gain entry. When they entered, Martinez noticed that the premises housed a large auto repair shop with numerous cars and two watch dogs. Martinez also noticed that there was a hole in the east wall of the building. After the dogs were restrained, the officers began their search. The officers found no contraband during their search of 4844 West North Avenue. Thereafter, the officers crawled through the hole in the wall into the adjacent premises at 4840 West North Avenue. The opening was about four feet high and three feet wide. The hole was used by the guard dogs to go from one building to another. Martinez further testified that inside the 4840 building he saw more cars and automobile parts as well as a boat. The officers returned to the building they had originally entered and obtained the keys for the cars and again went through the hole in the wall to continue their search. The officers searched the vehicles and found contraband inside the boat.

Chicago police officer Thomas Finnelly next testified. He stated that he had been told by an informant that the informant had gone to the North Avenue Repair Shop at 4844 West North Avenue in Chicago and bought a controlled substance from a person named Pigwi. Finnelly later went to 4844 West North Avenue and conducted a surveillance of the North Avenue Repair Shop. He did not pay any particular attention to the adjoining building. Based on the information provided by the informant and his surveillance, Finnelly obtained a warrant to search the premises. Finnelly further testified that during the course of the search of the adjoining building at 4840 West North Avenue, he went to the front door to see where it let out. The entranceway by the door was filled with automobile tires, rims and car seats. The officers discovered that the door had been boarded shut with two-by-four boards which had been nailed into the door and wall. Finnelly stated that he had no idea that he was entering 4840 West North Avenue when he crawled through the hole in the wall. If he had known that the 4840 building was attached to the 4844 building, he testified he would have added the address onto the search warrant.

The defendant testified that he bought the building at 4844 West North Avenue in 1981 and used it to conduct auto repairs. Approximately two years later, he purchased the 4840 West North Avenue building. The defendant testified that he used this building to store vehicles and it was not part of his repair shop, although he and his employees at various times used the hole in the wall between the buildings to get from one building to the other. Defendant stated that the second building had been marked as "4840" since the time he pur-

chased it. The defendant further stated that he created the hole in the wall so that his two guard dogs could protect both buildings at night. The hole went through two separate but adjacent walls. He would only use this opening to go from building to building when it was absolutely necessary. Defendant testified that his employees frequently used the hole to go back and forth through the buildings, especially in the winter when it was cold outside.

Defendant further testified that the front door of the 4840 West North Avenue building was secured but not boarded up. He stated that a key could not be used to enter the front door of the 4840 building but noted that there was a rear entrance to the building which could be used. At the time that the search warrant was executed, defendant was storing a boat and about 12 cars, some of which he owned, in the 4840 building. Defendant stated that the keys for all the cars which were stored in the 4840 building were in the cars. He did keep keys for cars in the office of the building but the keys were only for the cars in the 4844 building.

Lillie Brooks testified that she was a postal carrier and that her route included the buildings at 4844 and 4840 West North Avenue. She stated that Rusnok Tool Works had been located at 4840 West North Avenue and the building was marked with a sign labelling it as such but Rusnok Tool Works had moved out.

Willie Taylor testified that he was a former employee at the auto body repair shop at 4844 West North Avenue. He stated that after the defendant purchased the building at 4840 West North Avenue, the defendant used it to store cars, but the building was not used to conduct auto repairs. Taylor said he was in charge of bringing cars to and from the storage building to the repair shop. He also checked on the building at 4840 West North Avenue two or three times a week to make sure there were no break-ins. The defendant had told him and three other employees to put the hole in the wall in order for the watch dogs to go through and check the other building.

The State argues on appeal that the trial court erred in suppressing the State's evidence because it had been obtained by an overbroad search. The State contends that since the premises where the evidence was seized was immediately next to, and shared a common wall with, the building for which the officers had a valid search warrant and where the defendant had created a passageway between the two buildings and both buildings were being used to house one business, the search was proper.

■■ ■ A trial court's ruling on a motion to suppress will not be overturned unless manifestly erroneous. (*People v. Galvin* (1989), 127

Ill. 2d 153, 535 N.E.2d 837; *People v. Winters* (1983), 97 Ill. 2d 151, 454 N.E.2d 299.) At a hearing on a motion to suppress, it is the function of the trial court to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) On appeal from a trial court's ruling sustaining defendant's motion to suppress, the State has the burden of demonstrating that the court's ruling was manifestly erroneous. *People v. Stuckey* (1979), 78 Ill. App. 3d 1085, 398 N.E.2d 97.

In arguing that the trial court's ruling was manifestly erroneous, the State relies on *Maryland v. Garrison* (1987), 480 U.S. 79, 94 L. Ed. 2d 72, 107 S. Ct. 1013. In *Garrison*, Baltimore police officers obtained and executed a warrant to search a person named McWebb and a third-floor apartment at a certain address for controlled substances. At the time of executing the search warrant the police believed that there was only one apartment on the third floor of the described premises. In fact, there were two apartments, one occupied by McWebb and one by the defendant. Before the officers became aware that they were in the defendant's apartment, they discovered the contraband that provided the basis for defendant's conviction. The trial court denied the defendant's motion to suppress the evidence, and the supreme court upheld the decision. Although the court concluded that the search of the third-floor common area was legal, the court outlined the limits on the police officers' conduct, stating:

"If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. The officers' conduct and the limits of the search were based on the information available as the search proceeded." (*Garrison*, 480 U.S. at 86-87, 94 L. Ed. 2d at 82, 107 S. Ct. at 1018.)

The State, relying on *Garrison*, maintains the police officers in the case at bar reasonably believed that the North Avenue Repair Shop was only one building based on the information the officers received from the informant and during their surveillance. The State further maintains that it was only upon entering the premises that the offi-

cers discovered that this was not the case and that the defendant had changed the nature of the premises and created one building out of two. However, *Garrison* is clear in its holding that the conduct of police officers must be judged on the basis of the information available to them at the time they acted. (*Garrison*, 480 U.S. at 85, 94 L. Ed. 2d at 81, 107 S. Ct. at 1017.) The courts pointed out that, as the police officers correctly recognized, they were required to discontinue the search of the defendant's apartment as soon as they discovered that there were two separate units on the third-floor premises and they, therefore, were put on notice of the risk that they might be in a unit erroneously included in the terms of the warrant.

■ In the case at bar, no evidence was presented at the suppression hearing that, at the time they acted, the police officers had information that any contraband was located in the building adjacent to the one they were searching. Further, it is clear that two separate buildings with separate addresses were involved. The testimony at the motion to suppress hearing established that the building for which the police had a search warrant was designated with a sign identifying it as the North Avenue Repair Shop with the address of 4844 West North Avenue. This was the address specified in the search warrant as the location to be searched. The second building which the officers searched was labeled as Rusnok Tool Works with an address of 4840 West North Avenue. Under these circumstances, it is our determination that the police officers knew or should have known that 4840 West North Avenue was a separate building and should have limited their search to the 4844 building for which they had a warrant. (*Garrison*, 480 U.S. 79, 94 L. Ed. 2d 72, 107 S. Ct. 1013.) We agree with the trial court's ruling that "any sort of decent surveillance" would have put the officers on notice that there were separate buildings involved and that the police officers' conduct was unreasonable.

The State also relies on *United States v. Lemmons* (6th Cir. 1975), 527 F.2d 662, in arguing that the search here was not overly broad. In *Lemmons*, the police officers obtained and executed a warrant for a fashion store. The search warrant stated that the premises to be searched were located at 9300 Woodward Avenue and the contraband was found in an area of the store located at 9304 Woodward. The store occupied both the 9300 and 9304 addresses although there was only one public entrance, which was located at 9300 Woodward. The 9304 entrance was blocked by a display cabinet. At the time of the search, an archway had been opened between the two addresses for the use of personnel and customers. The court held the search of both buildings was not improper since the store occupied both addresses

and, at the time of the search, the store used both portions of the building for business.

The State contends that *Lemmons* controls the case at bar. We disagree. In the instant case, the testimony at the hearing on the motion to suppress was that the hole in the wall was about four feet high and three feet wide and that the hole was created as a passageway for guard dogs. Although employees of the North Avenue Repair Shop used the hole to go into the storage area in the 4840 building, there was no testimony that the hole in the wall was created for or ever used by customers of the repair shop. Further, it is clear in *Lemmons* that the store encompassed both addresses. In the instant case, defendant and his employee, Willie Taylor, both testified that the 4844 building was the location of the North Avenue Repair Shop and that the 4840 building was merely used for storage and not part of the repair shop. Upon the facts presented in this case, it is our opinion that *Lemmons* is distinguishable and that it was unreasonable for the search officers to go beyond the defined area of the search warrant.

The State also relies on *People v. Gordon* (1984), 128 Ill. App. 3d 92, 470 N.E.2d 29, *People v. Thomas* (1979), 70 Ill. App. 3d 459, 388 N.E.2d 941, *People v. Fragoso* (1979), 68 Ill. App. 3d 428, 386 N.E.2d 409, *People v. Laws* (1972), 7 Ill. App. 3d 826, 288 N.E.2d 890, and *People v. Lavendowski* (1928), 329 Ill. 223, 160 N.E. 582. The issue addressed in these cases is the sufficiency of the description or the technical nature of the description in the search warrant. The defendant has not argued in the trial court or on appeal that the warrant was not sufficiently descriptive in its language describing the person and location to be searched. Therefore, we find the cited cases to be inapposite to the case at bar.

■ In an alternative argument, the State contends that the police officers acted in good faith when they honestly believed that their warrant was valid because the auto shop extended into the adjacent building. (*United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.) However, the trial court heard the testimony of the police officers in this regard and found it unworthy of belief. (See *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Although the officers alleged that they did not know that 4840 West North Avenue was a separate building, since there was no address marker on the door, this testimony was contradicted by the testimony of the postal carrier, Lillie Brooks, and the employee of the defendant, Willie Taylor, as well as the testimony of the defendant. In addition, photos were introduced into evidence, and based thereon, the trial court made a finding of fact that an address marker was on the 4840 build-

ing. Accordingly, it is our holding that the State has not met its burden of demonstrating that the trial court's ruling was manifestly erroneous, and we affirm its order sustaining defendant's motion to suppress. *Galvin*, 127 Ill. 2d 153, 535 N.E.2d 837; *Stuckey*, 78 Ill. App. 3d 1085, 398 N.E.2d 97.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MANNING, P.J., and O'CONNOR, J., concur.