THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CATHERINE WAGERS *et al.*, Defendants-Appellants.

Third District   No. 3—93—0250

Opinion filed January 20, 1994.

Kerry R. Cordis, of Kerry R. Cordis, Ltd., of Princeville (Mark Gilles, of counsel), for appellants.

James D. Owens, State's Attorney, of Toulon (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendants were indicted and convicted on charges of (1) unlawful production of Cannabis sativa plants, (2) unlawful possession of cannabis, (3) unlawful manufacture of cannabis, and (4) unlawful possession of cannabis with intent to deliver. The circuit court of Stark County sentenced defendant Wagers to three years in the Department of Corrections on all four counts and defendant Hatfield to seven years on counts I, III and IV, but did not sentence him on his count II conviction for unlawful possession of cannabis. Defendants appeal, contending that the trial court erred by denying the defendants' "Motions to Quash Search Warrant and Suppress Evidence." The defendants also contend that the trial court improperly entered multiple judgements on the cannabis charges.

On September 18, 1990, Special Agent Robert Yedinak of the Illinois State Police filed a written complaint for a search warrant to search:

> "a two story white house, a trailer, storage sheds and out buildings and garden and vegetation area and persons living or found on said premises located at: R.R. #2, Toulon, Stark County, Illinois, and the North edge of the unincorporated Village of Elmira and on the east edge of Elmira Road (County Road 800E) and approximately 1/2-3/4ths miles North of Illinois Route 93."

The complaint sought seizure of a number of things including Cannabis sativa plants and cannabis. The complaint claimed that proba-

ble cause existed to believe that these things existed on the stated premises based on facts set forth in the attached affidavit.

The attached affidavit of Agent Yedinak stated that through a conversation with Stark County Sheriff Lonnie Dennison, Agent Yedinak learned that several individuals from the same area of Kentucky had recently purchased three tracts of land in Stark County and had moved into the area. The individuals had asked to pay cash for the property and "to keep the payments below $10,000 in order to avoid disclosure and reporting to the government." The conversation revealed that the individuals purchased the land with cash payments each less than $10,000, which was confirmed through the Stark County records and an interview of the real estate agent who was involved. The affidavit named the "individuals involved" as Homer Curry, Ernie W. Hatfield, Eddie Burnette, Charles Hoskins and Sterling McDonald and stated that all the individuals had arrest records involving illegal use of cannabis.

The affidavit then stated Agent Yedinak's personal observations of the property, including seeing "approximately 25 leafy, green plants which appear to be three to five feet tall, growing inside a large patch of weeds." These plants were in a cultivated area approximately 40 feet from the trailer behind an equipment shed. The affidavit stated that it was because of Agent Yedinak's experience and training that he knew they were cannabis plants.

The affidavit next stated that the Stark County records and conversations with real estate agents reveal that "the property is owned by Homer Curry, Ernie W. Hatfield, and Sterling McDonald." Also, "[a] check of the motor vehicle and driving records reveal [sic] that Hatfield and McDonald list the house and trailer as their respective residences." The legal description of the property was set forth as "the North side of lot 13 and located in the Southeast Quarter (S.E. 1/4) of Section 20 of the Village of Elmira, Elmira Township, Stark County, Illinois."

Finally, the affidavit stated that through conversations with agents of the Missouri State Police, Agent Yedinak learned that Missouri officials had observed approximately 8,000 to 10,000 marijuana plants being grown on property belonging to Ernie Hatfield and that Ernie Hatfield, Sterling McDonald and Charles Hoskins had been arrested on possession of marijuana and related charges. Agent Yedinak had also received information that a person matching the description of defendant Ernie Hatfield had purchased potting soils and planting trays at a local nursery.

According to the record, on September 14, 1990, the officers searched two separate properties. The property on which the trailer stood was owned by Sterling McDonald, and the property on which the white house and garage stood was owned by defendant Hatfield. Upon execution of the search warrant, officers found defendant Catherine Wagers in the white house. Officers also found a vehicle registered in defendant Hatfield's name parked on the trailer property. In the white house and garage officers found, among other things, a marijuana grower's guide in a downstairs bedroom of the white house and 57 marijuana plants hanging in the garage, and a canvas tarp containing marijuana also was discovered in the garage.

On December 2, 1991, the defendants filed a "Motion to Quash Search Warrant and Suppress Evidence." The defendants sought to suppress the evidence found in the white house and garage. The trial court denied the defendants' motion. At trial, the defendants objected to the introduction of any of the items seized from the white house and garage, reiterating the arguments set forth in their motion to suppress. The court overruled the objection.

On appeal, the defendants argue that the search warrant executed in this case was overbroad and either contained deliberate falsehoods or recklessly disregarded the truth, and that as a result, the items seized from the white house were improperly admitted at trial. Specifically, the defendants argue that the search warrant at issue improperly referred to the premises to be searched as a single premise, when actually there were two separate premises involved. They point out that, in fact, defendant Hatfield owned the property on which the white house and garage sat and Sterling McDonald owned the property on which the trailer sat. The defendants further assert that separate ownership of the premises was evident from the legal descriptions for both premises and the Stark County records as well as the physical appearance of the properties. Based on these factors, defendants contend that the search warrant contained deliberate falsehoods or the affiant officer recklessly disregarded the truth. The defendants further argue that because the marijuana being cultivated was on the trailer property, there was a lack of probable cause to support the search of the white house premises.

The fourth amendment of the United States Constitution prohibits the issuance of any warrant "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S.

Const., amend. IV; see also Ill. Const. 1970, art. I, §6.) There must be probable cause that a crime was committed and probable cause that evidence exists on the place to be searched. (*People v. George* (1971), 49 Ill. 2d 372, 377, 274 N.E.2d 26, 29.) The defendants cite *Maryland v. Garrison* (1987), 480 U.S. 79, 85, 94 L. Ed. 2d 72, 81, 107 S. Ct. 1013, 1017, in support of their overbreadth argument, claiming that the warrant was "unnecessarily broad" regarding the place to be searched.

We first note that the search warrant sets forth both the white house and trailer as well as the "storage shed and outbuildings and garden and vegetable area" as places to be searched. The warrant also specifically describes the location of the property. Thus, the warrant did particularly set forth the places to be searched. The dispositive issue, therefore, is whether the fact that the buildings sat on separate properties renders the warrant overbroad. We believe it does not.

Although there were two properties, Agent Yedinak testified that he was unable to determine the lot lines from the deeds. Agent Yedinak also testified that the physical appearance offered nothing to indicate where the lot lines were and he did not measure pursuant to the legal description on the deeds to determine where the lot lines were. Agent Yedinak testified that he had observed people coming and going to each residence and that he observed Ernie Hatfield going into the white house. Further, testimony also indicated that the white house and trailer were only 25 feet apart and a television antenna line ran from the trailer to the antenna on top of the white house. We also note that defendant Hatfield's vehicle was in the trailer driveway when the officers executed the search warrant.

The defendants cite *People v. Sanchez* (1989), 191 Ill. App. 3d 1099, 548 N.E.2d 513, as analogous precedent for the case at hand. In *Sanchez*, officers executed a search warrant and discovered a hole in a wall of the premises to be searched leading to the building next door. The officers went through the passageway and searched the adjacent building which was not named in the search warrant, where they discovered contraband. The trial court in *Sanchez* ruled that the search was overbroad, suppressed the State's evidence and the appellate court affirmed. (*Sanchez*, 191 Ill. App. 3d 1099, 548 N.E.2d 513.) *Sanchez* is inapplicable to the present case. In *Sanchez* the *search* was overbroad because the officers searched a building not named on the search warrant. In the present case, each building the officers searched was named in the search warrant, includ-

ing the white house. Thus, *Sanchez* does not support the defendants' argument that the search warrant was overbroad.

■■ ■ In light of the circumstances, we believe that the search warrant and affidavit specifically set forth the place that was to be searched and, thus, was not overbroad. (See *Garrison*, 480 U.S. 79, 94 L. Ed. 2d 72, 107 S. Ct. 1013.) We also agree with the trial court that the search warrant set forth sufficient probable cause to justify the search of the white house. As the defendants note, the investigation revealed cultivated marijuana on the trailer property. Additionally, testimony at trial established that the cultivated marijuana was in close proximity to both the white house and trailer. The affidavit stated that the investigated individuals, including McDonald and Hatfield, were all from the same area of Kentucky and had arrest records involving the illegal use of cannabis. Further, the investigators had been informed on August 3, 1990, that Missouri officials had observed 8,000 to 10,000 marijuana plants growing on Hatfield's property in Missouri, and on September 12, 1990, Missouri police informed the investigators that Hatfield, McDonald and Charles Hoskins had been arrested and were in custody for possession of marijuana and related charges. In light of the proximity of the two residences and the community nature of the activities thereon, we find that the trial court correctly found sufficient probable cause to justify the search of the white house and garage.

The defendants also argue that the trial court held a hearing under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, and that, therefore, defendants had made a substantial preliminary showing of falsehood or reckless disregard. We disagree.

It is unclear from the record whether the trial court specifically held a *Franks* hearing. Moreover, a reading of the trial court's findings in denying the defendants' motion to suppress demonstrates that the court found no deliberate falsity or reckless disregard for the truth in the affidavit. The court's conclusion is supported by evidence in the record. Before a trial court must hold a *Franks* evidentiary hearing, the party challenging the admissibility of evidence must: (1) allege a deliberate falsehood or reckless disregard for the truth; and (2) make an offer of proof to support such allegations. (*Franks*, 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.) However, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable

cause, no hearing is required." *Franks*, 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.

■ In this case, the trial court found that sufficient probable cause was set forth in the search warrant and affidavit to support the search of the white house. Applying *Franks* and setting aside the alleged falsity (property description), it is apparent that defendants failed to meet the predicate basis for a *Franks* hearing. Thus, regardless of whether the court specifically held a *Franks* hearing, defendants could not have prevailed in their motion to suppress.

■ Finally the defendants contend, and the State concedes, that the trial court improperly entered multiple judgements against each defendant at sentencing. Both defendants were convicted on all four offenses as charged. The court sentenced Wagers to three years in the Department of Corrections based on all charges of which she was convicted. The court sentenced Hatfield to seven years in the Department of Corrections on all counts except count II for unlawful possession of cannabis. The record reveals that there were two separate groupings of marijuana constituting two separate acts: (1) the marijuana in the garage and (2) the marijuana being grown. These two acts support the convictions of unlawful production of cannabis and unlawful manufacture of cannabis. Based on the record in this case, the charges of unlawful possession of cannabis and unlawful possession of cannabis with the intent to deliver could only be predicated on these same two acts which support the convictions for unlawful production of cannabis and unlawful manufacture of cannabis. Therefore, the convictions for unlawful possession of cannabis and unlawful possession of cannabis with intent to deliver are precluded because more than one crime has been derived from the same physical act. (See *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844; *People v. Callaway* (1989), 185 Ill. App. 3d 136, 144, 540 N.E.2d 1153, 1158.) Thus, the convictions and sentences imposed on defendant Wagers for unlawful possession of cannabis and unlawful possession of cannabis with intent to deliver must be vacated. Likewise, the conviction and sentence imposed on defendant Hatfield for unlawful possession of cannabis with intent to deliver must also be vacated.

In sum, we affirm the convictions of unlawful production of cannabis and unlawful manufacture of cannabis with respect to both defendants. However, we vacate the convictions of defendant Wagers for unlawful possession of cannabis and unlawful possession of cannabis with intent to deliver. We also vacate the conviction of

defendant Hatfield for unlawful possession of cannabis with intent to deliver.

The order of the circuit court of Stark County is affirmed in part, vacated in part and the cause is remanded to the trial court for resentencing and the imposition of proper fines and costs.

Affirmed in part; vacated in part and remanded.

SLATER, P.J., and LYTTON, J., concur.