No. 2--06--0518     Filed: 3-26-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--105 |
| DAVID D. DUNNAVAN, | ) ) | Honorable Gerald F. Grubb, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, David D. Dunnavan, appeals his conviction of child pornography (720 ILCS 5/11--20.1(a)(1)(iv) (West 2002)), contending that it is barred by the principle of double jeopardy. Defendant argues that his prior conviction in New Mexico of sexual exploitation of children (possession of child pornography) (N.M. Stat. Ann. §30--6A--3(A) (Lexis Nexis 2007)) constitutes the same conduct and is also a lesser-included offense of the Illinois offense of creation of child pornography (720 ILCS 5/11--20.1(a)(1)(iv) (West 2002)), and that this serves to bar his conviction of the Illinois offense in this case. We affirm.

On March 22, 2005, defendant was charged in New Mexico with the crime of sexual exploitation of a child (possession of child pornography). On April 4, 2005, defendant pleaded no contest to the charge and on May 31, 2005, defendant was sentenced in New Mexico for the offense.

On June 3, 2005, defendant was charged in Illinois with one count each of child pornography and aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1)(i) (West 2002)). Before trial, defendant moved to dismiss the Illinois charges. Defendant argued that his New Mexico conviction of sexual exploitation of a child was based on his possession of a videotape depicting him engaging in sexual activity with a child, T.R. Defendant contended that possession of the videotape was a lesser-included offense of the Illinois charge of child pornography, reasoning that, in making the tape, defendant necessarily had to possess the tape; in other words, defendant could not have created or manufactured the videotape without actually or constructively possessing the tape at the same time. Defendant concluded that the Illinois prosecution for child pornography would violate the prohibition against double jeopardy.

The State argued that the offenses did not share the same elements and that, therefore, the Illinois prosecution was not barred by double jeopardy. The State contended that creating or making the tape was separate conduct from possessing it. The State urged the trial court to focus on the elements of each offense in its double jeopardy analysis, reasoning that the fact that the two offenses involved overlapping conduct was not significant to a proper double jeopardy analysis.

The trial court denied defendant's motion to dismiss. Calling the issue a close question, the trial court held that possession was not an essential element of child pornography predicated on creating or manufacturing a videotape recording. The trial court also held that the Illinois offense of aggravated criminal sexual abuse shared no elements with the New Mexico offense.

The case proceeded to trial. The evidence adduced at trial showed that, in 2002-03, defendant had been employed as a teacher in the Belvidere School District. New Mexico

investigators contacted the school district administration about a videotape. The principal of defendant's former school recognized defendant and T.R. in the videotape. T.R. was about 10 years old at the time that defendant was employed with the school district. The videotape depicted defendant and T.R. in one of the school's classrooms. T.R. had been blindfolded and was eating a lollipop shaped like male genitalia. The videotape also showed defendant rubbing his penis in T.R.'s hair.

The evidence also showed that the equipment used to make the videotape of the incident did not belong to the school district. The school where defendant had been employed did not possess a video camera, and school policy required parental permission to engage in videotaping a student.

Defendant offered no evidence in his own behalf. Defendant was found guilty of both charges. Defendant filed a motion for a new trial, which on May 16, 2006, was denied by the trial court. Defendant was sentenced to a 12-year term of imprisonment on the child pornography charge; no sentence was imposed on the aggravated-criminal-sexual-abuse conviction because the trial court held that it was based on the same conduct as the child-pornography conviction. Defendant timely appeals.

Defendant's sole contention on appeal is that his child-pornography conviction violates the prohibition against double jeopardy. Defendant argues that the act of creating the videotape necessarily required him to possess the videotape he was creating. Defendant argues that, as a result, the New Mexico offense is actually a lesser-included offense of the Illinois offense. Defendant concludes that, this being so, he is being punished twice for the same conduct, which violates the prohibition against double jeopardy.

No. 2--06--0518

Before beginning our analysis of defendant's contention, we first consider our standard of review. Generally, we review a trial court's decision on a motion to dismiss charges on double-jeopardy grounds for an abuse of discretion. People v. Brener, 357 Ill. App. 3d 868, 870 (2005). However, where no factual determinations are involved in the trial court's decision, a purely legal question is presented and we review the trial court's decision de novo. Brener, 357 Ill. App. 3d at 870. Here, the issue is purely a legal question and we will review the trial court's judgment de novo.

We now turn to defendant's contention. The prohibition against double jeopardy is of both constitutional (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. 1, §10) and statutory dimension (720 ILCS 5/3--4(c)(1) (West 2004)). The prohibition against double jeopardy is designed to protect a citizen against three distinct abuses: " ' "(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." ' " People v. Sienkiewicz, 208 Ill. 2d 1, 4 (2003), quoting People v. Henry, 204 Ill. 2d 267, 283 (2003), quoting People v. Placek, 184 Ill. 2d 370, 376-77 (1998). Notwithstanding the constitutional protection against double jeopardy, it is long since settled that, under the separate-sovereigns doctrine, separate sovereigns, such as sister states, or the federal government and the state government, may prosecute the same person for the same acts without offending the double jeopardy clause of either the state or the federal constitution. People v. Porter, 156 Ill. 2d 218, 221-22 (1993). The rationale for the separate-sovereigns doctrine is that " 'prosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, "subject [the defendant] for the same offence [sic] to be twice put in jeopardy." ' " Porter, 156 Ill. 2d at 221-22, quoting United States v. Wheeler, 435 U.S. 313, 317, 55 L. Ed. 2d 303,

-4-

308-09, 98 S. Ct. 1079, 1082-83 (1978). The fact that, here, two separate sovereigns conducted prosecutions based on defendant's similar acts does not leave him bereft of protection, however. Section 3--4(c)(1) of the Criminal Code of 1961 provides:

"A prosecution is barred if the defendant was formerly prosecuted in a District Court of the United States or in a sister State for an offense which is within the concurrent jurisdiction of this State, if such former prosecution:

(1) Resulted in either a conviction or an acquittal, and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution, or the offense was not consummated when the former trial began." 720 ILCS 5/3--4(c)(1) (West 2004).

Defendant asserts and we agree that this case involves the statutory prohibition against double jeopardy and not the constitutional provision. Nevertheless, it is helpful to recite the requirements of each to gain a fuller understanding of the issue here.

A double jeopardy violation of constitutional magnitude is analyzed according to the Supreme Court's holding in Blockburger v. United States, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932). Sienkiewicz, 208 Ill. 2d at 4-5. Under the Blockburger, or same-elements, test, the inquiry is "whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution." Sienkiewicz, 208 Ill. 2d at 5. The Blockburger test "emphasizes the elements of the two crimes. [Citation.] If each crime requires proof of a fact not required by the other, the Blockburger test is met, and the double jeopardy prohibition is not infringed, notwithstanding a significant overlap in the proof

offered to establish the crimes." Sienkiewicz, 208 Ill. 2d at 6. Therefore, the Blockburger test prohibits a state from obtaining a conviction on a lesser-included offense and then subsequently prosecuting the greater offense, because, by definition, the lesser-included offense requires no proof beyond what is required for the greater offense. Sienkiewicz, 208 Ill. 2d at 6. This rationale is also applicable to the statutory prohibition against double jeopardy.

Section 3--4(c)(1) of the Criminal Code will bar a prosecution if four requirements are fulfilled:

"[F]irst, the Federal or sister-State prosecution must indeed be a former prosecution; second, the former prosecution must have resulted in a conviction or an acquittal; third, both prosecutions must be for the same conduct; and fourth, proof of every required fact of one of the prosecutions must be required in the other prosecution." (Emphasis in original.) Porter, 156 Ill. 2d at 222.

The absence of any one of the four requirements will render section 3--4(c)(1) inapplicable and the challenged prosecution may go forward. Porter, 156 Ill. 2d at 223. At issue in this case are the third and fourth Porter requirements--whether the New Mexico prosecution involved the same conduct and whether the elements of the New Mexico exploitation of a child (possession of child pornography) offense are included in the Illinois offense of creating or manufacturing child pornography. As noted immediately above, where a defendant has been convicted in a sister state of a lesser-included offense, prosecution of the greater offense in Illinois is barred by application of section 3--4(c)(1) because, necessarily, the lesser-included offense requires no proof beyond what is required for the greater offense.

No. 2--06--0518

The Blockburger test proceeds first by considering whether the two prosecutions are based on the same act. If the prosecutions are predicated on different acts, then the prohibition against double jeopardy will not be violated. Sienkiewicz, 208 Ill. 2d at 6. This prefatory analysis coincides with the third Porter requirement, that both prosecutions must be for the same conduct. Porter, 156 Ill. 2d at 222. As there is no dispute concerning whether the New Mexico prosecution is completed and resulted in a conviction, we will first consider whether the New Mexico conviction is predicated on the same act or conduct as the Illinois prosecution.

While Sienkiewicz involves the constitutional Blockburger analysis, it also provides a useful discussion about how to go about determining if the conduct is the same in the two offenses under consideration. Sienkiewicz reaffirmed the vitality of People v. King, 66 Ill. 2d 551 (1977), in which the supreme court defined an "act" to be "an overt or outward manifestation that will support a different offense." Sienkiewicz, 208 Ill. 2d at 7. Sienkiewicz noted that, in People v. Baity, 125 Ill. App. 3d 50 (1984), the appellate court had adopted a six-factor test designed to analyze whether there were one or more acts underlying the charges, and it noted further that the supreme court had never positively endorsed the Baity analysis. Sienkiewicz, 208 Ill. 2d at 7-8. The supreme court then stated that, "[w]hile we continue to advocate the King doctrine as the guiding principle on this issue, we acknowledge the utility of the six-factor [Baity] test in many instances," and it then proceeded to employ the Baity analysis to determine whether there were one or more acts upon which the two offenses at issue there were predicated. Sienkiewicz, 208 Ill. 2d at 8. In People v. Dinelli, 217 Ill. 2d 387, 404 (2005), the supreme court again adopted the Baity test to analyze whether the two crimes at issue there were predicated on one or more acts. Based on Sienkiewicz

-7-

and <u>Dinelli</u>, then, we will employ the <u>Baity</u> test to determine whether the Illinois prosecution is "for the same conduct" (<u>Porter</u>, 156 Ill. 2d at 222), <u>i.e.</u>, predicated on the same act, as the New Mexico conviction.

In determining whether there are one or more acts underlying the charges in question, the court should look to the following factors: "(1) whether the defendant's [actions] were interposed by an intervening event; (2) the time interval between the successive parts of the defendant's conduct; (3) the identity of the victim; (4) the similarity of the acts performed; (5) whether the conduct occurred in the same location; and (6) the prosecutorial intent, as shown by the wording of the charging instruments." <u>Dinelli</u>, 217 Ill. 2d at 404; <u>Sienkiewicz</u>, 208 Ill. 2d at 7. The first, second, and fifth factors strongly favor finding separate acts. Defendant created the videotape during the 2002-03 school year. At least a year or two later, he was charged with exploitation of a child by possessing child pornography. In between those events, defendant left his employment with the school district and moved from Illinois to New Mexico, and this constitutes an intervening event. There is also an extended period of time between the two events. Further, the locus of the Illinois crime was in Illinois, while the exploitation of a child based on possession of child pornography occurred in New Mexico. The temporal and spatial separation of the Illinois and New Mexico charges strongly supports the conclusion that the offenses were founded on different acts.

The remaining factors are inconclusive. The identity of the child depicted on the videotape that defendant created and possessed remains the same; however, it is not clear that the New Mexico crime requires an actual victim--the crime is accomplished by the mere possession of media

depicting child pornography. Likewise, the Illinois crime of creating child pornography does not require the identification and testimony of the child victim.

The similarity of the acts is also inconclusive. In one sense, the acts are the same, because the actions depicted on the videotape that defendant created and possessed are the same. On the other hand, for the purpose of the Illinois offense, defendant engaged in creating the recording through videotaping his actions with T.R.; for the purpose of the New Mexico offense, defendant possessed a tape depicting a child engaged in sexual conduct with an adult. Defendant focuses on the contents of the tape and the circumstances surrounding the creation of the tape in order to assert that the acts are the same; however, the proper focus is on the conduct of defendant. There is some force to defendant's position that the acts are similar because the act of creating the tape necessarily implies possession--either constructive or actual--of the tape. This position, however, still focuses on the tape and not the conduct of creating a recording or possessing a recording. Because the inquiry is so closely intertwined with the tape (as opposed to any tape), we cannot say that the similarity-of-the-acts factor is weighted in favor of finding one act or finding multiple acts.

Last, the prosecutorial intent cannot be fully determined, as the record lacks any information regarding the manner in which the New Mexico offense was charged. Given the long time between the creation of the child pornography and defendant's being found with it in his possession, during which time defendant moved to another state, as well as the physical distance separating the events, we hold that the two offenses were based on separate acts. As there are two separate acts supporting the various offenses, there is no concern that the prohibition against double jeopardy will be violated. Because the two offenses are based on different acts, section 3--4(c)(1) does not apply to bar the

No. 2--06--0518

Illinois prosecution. Accordingly, we need not consider whether the New Mexico offense is a lesser-included offense of the Illinois offense of child pornography.

Defendant contends that the act of possession was inherent in the act of creating the tape. According to defendant, to create the recording on the tape, he necessarily, either actually or constructively, possessed the tape onto which he was placing the recording. Defendant attempts to analogize the creation of the item and the possession of the item to cases involving the growing of marijuana. For example, defendant points to People v. Wagers, 255 Ill. App. 3d 497 (1994), for the proposition that a conviction of the manufacture of an item precludes a conviction of the possession of the same item. In Wagers, the defendants were convicted of producing and possessing marijuana. Wagers, 255 Ill. App. 3d at 503. The court held that the possession convictions were predicated on the same conduct as the producing and manufacturing convictions, and thus it vacated the possession convictions. Wagers, 255 Ill. App. 3d at 503. We find the analogy to be inapt under the circumstances of this case. In Wagers, the defendants were convicted of possession occurring simultaneously with the production or manufacture of the marijuana. By contrast, here, defendant's possession occurred after a significant lapse of time (more than a year) and after defendant had left his employment in Illinois and moved to New Mexico. While defendant's argument is not without some appeal, and we do not deny that there was a possessional component in the creation of the videotape, to claim that the possessional component extends throughout the intervening years and distance stretches the analogy to Wagers past the breaking point. As we noted in our discussion of the six-factor Baity test, the attenuation wrought by time and distance in this case is of paramount significance and allows defendant's conduct here to be divided into more than one act. We reject

-10-

defendant's attempt to analogize his conduct here to that of the defendants in various marijuana-growing cases, like Wagers. (We also note that defendant appears to present the analogy more for the purpose of demonstrating that possessing of child pornography is a lesser-included offense of creating child pornography. Because we hold that defendant committed more than one act, we do not need to reach the same-elements component of the Porter analysis.)

Defendant also argues that a single course of conduct may not be subdivided in time and space solely for the purpose of carving multiple offenses from the act. Defendant points to Brener, 357 Ill. App. 3d at 871, for the proposition that double jeopardy cannot be avoided by dividing a single crime into a series of temporal or spatial units. Brener, however, is distinguishable from the circumstances of this case. In Brener, the defendant, who was intoxicated, embarked on an hour-long drive searching for his brother's broken-down motorcycle. Brener, 357 Ill. App. 3d at 869. During his drive, the defendant injured his sister by striking her with his car and then drove through three counties until he pulled into a police station, where he was arrested. Brener, 357 Ill. App. 3d at 869-70. The defendant was charged with driving under the influence in Winnebago County and aggravated driving under the influence in Jo Daviess County. Brener, 357 Ill. App. 3d at 870. The defendant pleaded guilty to the Winnebago County charges. A few days later, the defendant was indicted in Jo Daviess County for aggravated driving under the influence. Brener, 357 Ill. App. 3d at 870. The defendant's motion to dismiss the Jo Daviess County charges was granted. This court affirmed, reasoning that driving under the influence is a continuing offense that constitutes a single act. Brener, 357 Ill. App. 3d at 871. The State challenged the finding, contending that the time, the distance driven, the identity of the victims, and the locations all favored a finding of more than one

act. Brener, 357 Ill. App. 3d at 871. This court held that the time and distance driven were immaterial to the number of acts, because the prohibition against double jeopardy could not be avoided simply by subdividing an offense into a number of different temporal and spatial units. Brener, 357 Ill. App. 3d at 871. This court also held, without particular comment, that the different victims and the different locations of the offense were unimportant to the analysis. Brener, 357 Ill. App. 3d at 871.

While Brener rejected the precise analysis we employ above to determine that defendant here engaged in two acts, Brener is, nevertheless, factually distinguishable. In Brener, the defendant engaged in an offense that was relatively brief and located in a geographically compact and contiguous area. During the whole of his drive, defendant's condition, that he was intoxicated, and his purpose, finding his brother's broken-down motorcycle, remained the same. In this case, the lapse of at least a year to two years means that defendant's purpose could not have remained constant throughout. In Illinois, his purpose was to create a recording of his sexual conduct with T.R. In New Mexico, his purpose was no longer to engage in sexual conduct with T.R. or to create such a recording, but to possess images of child pornography. Likewise, the fact that defendant moved from Illinois to New Mexico makes it easier to divide the acts into spatial units than does a one-hour drive through contiguous territory as in Brener. Further, in Brener, since the conduct occurred during one continuous event, attempting to make temporal or spatial divisions would smack of arbitrariness; here, the lapse of time and the change in location readily lend themselves to making a reasoned and logical temporal and spatial distinction. Does this mean that, had the defendant in Brener traveled to Milwaukee and been arrested for driving under the influence there, we could carve two acts from

his conduct? Maybe, because different sovereigns would be prosecuting the offense. However, militating against such a result would be the continuous nature of the offense and the short period of time. We do not attempt to fashion a broad rule; however, we believe that it is appropriate to differ from the result in Brener in consideration of the unique facts here, such as the long lapse of time, the defendant's move to New Mexico, and the vast distance between Illinois and New Mexico

Indeed, we find instructive the reasoning in People v. Flaar, 366 Ill. App. 3d 685 (2006). There, the defendant was charged with possession of child pornography on July 15, 2003, in Kendall County and charged with dissemination of child pornography in Cook County, stemming from the defendant's June 4, 2003, sending of the images to an investigator in Cook County. Flaar, 366 Ill. App. 3d at 686. The defendant pleaded guilty to the Kendall County charges and then sought to dismiss the Cook County charges. Flaar, 366 Ill. App. 3d at 687. The trial court denied the defendant's motion to dismiss the Cook County charges and the defendant appealed.

The appellate court determined that the defendant's conduct constituted two acts. First, the defendant's act of disseminating the image he possessed constituted one act. The defendant's retention of possession of the image constituted a second and separate act. The appellate court reasoned that, while there was a possession attendant to the transmission of the image to Cook County, there was a second, separate possession over a month later when the defendant was found to have the image in his possession in Kendall County. Flaar, 366 Ill. App. 3d at 689. The appellate court was not concerned that the defendant apparently kept the image continuously from the date of dissemination to the date the image was discovered in his possession in Kendall County; instead, the appellate court focused on the defendant's voluntary decision to reaffirm his criminal conduct and

viewed the lapse of time as a paramount factor in that determination. The appellate court stated: "[the] defendant's decision to retain the data that he originally disseminated to an undercover police officer represents a commitment to consume, for his own sordid purposes, a copy of that which he originally disseminated." Flaar, 366 Ill. App. 3d at 689. By the lapse of time, the appellate court was able to determine that the defendant had made the conscious choice to commit a separate criminal act--"i.e., a new volitional departure toward a different criminal end." Flaar, 366 Ill. App. 3d at 689.

This analysis holds with even more force here. Defendant created a recording of his sexual conduct with T.R. While there was possession attendant to the creation of the recording, the fact that, a year or two later, following a move from Illinois to New Mexico, defendant retained the tape represents his new volitional departure toward a different criminal end. In this respect, Flaar offers compelling guidance.

Defendant attempts to distinguish Flaar, noting that there were two separate images: the one the defendant disseminated and the one the defendant possessed. We disagree. The defendant in Flaar e-mailed a copy of the image he possessed to the investigator in Cook County. This entailed creating a copy of the image the defendant retained. See Flaar, 366 Ill. App. 3d at 689 (the "defendant's decision to retain the data that he originally disseminated to an undercover police officer represents a commitment to consume, for his own sordid purposes, a copy of that which he originally disseminated" (emphasis added)). Thus, in Flaar, the defendant disseminated child pornography by creating a copy and sending it in an e-mail, and he possessed child pornography by retaining the original image.

The defendant's conduct in Flaar is effectively the same as defendant's conduct here. Further, the court relied on the passage of time to demonstrate a new, volitional departure toward a different criminal end. The court did not rely, contrary to defendant's assertion, solely on the fact that there ended up being two images in existence. See Flaar, 366 Ill. App. 3d at 689 (the fact that "the images constituting these separate possessions were identical in appearance is of little consequence to our analysis"). If anything, here, the longer lapse of time strengthens the determination that different acts occurred, because the defendant had that many more opportunities to dispose of the tape. That defendant decided to continue his possession at such widely separated points in time indicates his rededication to additional criminal conduct. See Flaar, 366 Ill. App. 3d at 689, quoting State v. Multaler, 252 Wis. 2d 54, 80, 643 N.W.2d 437, 449 (2002).

Defendant also cites to People v. Poliak, 124 Ill. App. 3d 550 (1984), in which this court held that section 3--4(c) barred the prosecution of the defendant for theft of a car in Illinois after she had already received an adjudication of delinquency in Colorado based on the theft of the same car. There, the State attempted to draw a distinction between obtaining unauthorized control over an item and exerting unauthorized control over an item. Poliak, 124 Ill. App. 3d at 556; see also Ill. Rev. Stat. 1981, ch. 38, par. 16--1(a)(1) (defining the offense of theft). According to the State, the defendant obtained control over the item in Illinois, and this was a separate act from the defendant's exertion of control over the item in Colorado. Poliak, 124 Ill. App. 3d at 556. This court rejected the State's argument. It held that the terms did not constitute different substantive conduct but, rather, "obtain and exert are only describing one unit of conduct." Poliak, 124 Ill. App. 3d at 557. Implicit in the holding, too, is a rejection that the temporal and spatial separation between the Illinois

and Colorado aspects of the conduct was sufficient to support separate acts and to avoid the prohibition against double jeopardy. Defendant thus argues that Poliak strongly supports his position that the possession began when the tape was created and continued unabated until he was arrested in New Mexico for possession of child pornography.

While we agree that defendant's argument is not without force, we nevertheless find that Poliak is distinguishable. The gravamen of the offense of theft is the unauthorized control over property of another. Poliak, 124 Ill. App. 3d at 556. The defendant in Poliak was charged with the singular conduct of having unauthorized control over another's property in both Illinois and Colorado. The time span of the conduct appears to have been a matter of two or three weeks. There was no issue raised as to time or location being sufficient to support more than one act; instead, the State pursued a difference between obtaining and exerting control, which this court rejected. Additionally, we note that the Baity test had not been promulgated at the time Poliak was decided and that Poliak did not conduct any analysis, implicit or explicit, of the six factors identified in Baity and endorsed in Sienkiewicz and Dinelli. In addition, while the exertion of unauthorized control over another's property is the gravamen of theft, here the two offenses have different objectives. In the Illinois charge, the criminal objective was to create child pornography, and possession was ancillary to the act of creation; in the New Mexico offense, the objective was to possess (presumably for his own personal use) an item of child pornography--in other words, possession was the sole point. Thus, there is a measure of change to the quality of conduct here that serves to differentiate it sufficiently to support more than one act; by contrast, in Poliak the point of the conduct remained

unchanged throughout the entirety of the time that the defendant possessed the stolen car. Thus, we find that Poliak does not require us to reach a different result.

Defendant also points to People v. Levan, 285 Ill. App. 3d 347 (1996), for the same proposition as Poliak. In Levan, the defendant stole Tiffany lamps in Illinois and attempted to sell them to an Arizona resident. Levan, 285 Ill. App. 3d at 349. The defendant was convicted in Arizona of attempted theft for the possession of Tiffany lamps; in Illinois he was charged with and convicted of theft of the same Tiffany lamps. Levan, 285 Ill. App. 3d at 349. The court held that the conduct, unauthorized possession of the lamps, was identical in both cases, and it applied the well-established rule that a conviction of the inchoate form of the offense precluded a conviction of the principal offense. Levan, 285 Ill. App. 3d at 349-50. Levan is not as strongly in defendant's favor as Poliak. In Levan, there was only the singular conduct of possessing unauthorized control over the lamps. There was not even an attempt to differentiate the conduct in Illinois and in Arizona. Here, by contrast, the conduct was widely separated in time and location, with the occurrence of intervening events, such as defendant leaving his employment in Illinois and moving to a new home in New Mexico. Levan is distinguishable and does not provide controlling guidance for our decision here.

We also note that, while Illinois authority has not precisely dealt with the exact issue in this case, our sister states have, and their analyses proceed along similar lines as ours. For example, in Wilson v. State, 121 Nev. 345, 359, 114 P.3d 285, 295 (2005), the court held that the defendant's convictions of both the production of pornographic material and the possession of the same pornographic material did not violate double jeopardy. Using the Blockburger test, the court

concluded that the offense of production was completed when the defendant photographed the victim, regardless of whether he later printed the photos; and the offense of possession of the photographs was separate because it was deemed to have occurred several days later and the defendant did not need to produce the pictures himself. Wilson, 121 Nev. at 359, 114 P.3d at 294-95. Likewise, in Cowart v. State, 873 N.E.2d 1140 (Ind. App. 2007) (Table), the court concluded that there had been no double jeopardy violation based on the defendant's creation of an obscene photograph of a child in 1999 and his possession of the photograph about 10 months later. While these cases may not have analyzed the issues according to the Baity analysis we employed above, they nevertheless concluded that some lapse of time between the creation of a child-pornographic image and the possession of the same image allows the defendant to make the choice again of violating the law and supports the conviction of two separate offenses. Wilson and Cowart thus bolster our conclusion that, here, defendant's creation of the videotape constituted a separate offense from the possession of the videotape more than a year later.

For the foregoing reasons, we affirm the judgment of the circuit court of Boone County.

Affirmed.

CALLUM, J., concurs.

JUSTICE GILLERAN JOHNSON, specially concurring:

I agree with the majority's holding that the defendant's conviction in this case is not barred by double jeopardy. I write separately to highlight the differences between this case and Brener, a case in which I was on the panel.

No. 2--06--0518

As the majority notes, the relevant facts in <u>Brener</u> were quite different from those in this case. The defendant in <u>Brener</u> engaged in one drunken journey that occurred over slightly more than one hour. That one journey happened to cross two county lines and create different harms in various counties. Nevertheless, it is well established that, under Illinois law, a single episode of alcohol-impaired driving constitutes one continuous act. <u>Brener</u>, 357 Ill. App. 3d at 871, citing <u>People v. Quigley</u>, 183 Ill. 2d 1, 10-11 (1998). Moreover, the very factors we find determinative today--the existence (or nonexistence) of an intervening act, the time interval between the commission of the two offenses, and whether the conduct occurred in the same location--dictated that we find the defendant's conduct in <u>Brener</u> to be a single act for purposes of double jeopardy. The defendant in <u>Brener</u> drove nonstop (and so there was no intervening act); the various portions of his drive that took place in the different counties occurred within approximately an hour; and the fact that his drive crossed county lines and created different harms was simply happenstance, in that there was no evidence that his intent (searching for his brother's broken-down motorcycle) varied as he drove from point to point. It was in the context of these facts that <u>Brener</u> described the amount of time, the distance ultimately covered, and the existence of different victims in different counties as "immaterial." <u>Brener</u>, 357 Ill. App. 3d at 871. <u>Brener</u> should not be read as derogating the application of these factors, which are properly considered as part of the six-factor <u>Baity</u> test.

The facts here are far different from those in <u>Brener</u>. Although the defendant was convicted of possessing (in New Mexico) the same pornographic video that he had earlier created (in Illinois), I find it indisputable that the two offenses involve separate conduct. Had the defendant been arrested for possessing the video at the same time that it was made, his argument would have some force: in

-19-

that situation, he would be correct that his creation of the video necessitated his simultaneous possession of it, in the same way that the production of the marijuana in <u>Wagers</u> encompassed the simultaneous possession of it. See <u>State v. Bertsch</u>, 707 N.W.2d 660, 666 (Minn. 2006) (where possession and dissemination of pornography took place at the same time, prosecution of both offenses violated double jeopardy). Here, however, the possession of the pornographic video was separated from the creation of it by the passage of more than a year and the defendant's decision to take it with him when he moved from Illinois to New Mexico. The majority rightly applies the analysis in <u>Flaar</u>, 366 Ill. App. 3d at 689, which focuses on the defendant's retention of the pornographic material over time as demonstrating a conscious choice to commit a separate criminal act, rather than a continuation of the original conduct. Slip op. at 14. In my view, it is this separate intent by the defendant to commit the new offense of possession, long after the offense of production was completed, that distinguishes this case from the single episode of conduct at issue in <u>Brener</u>, and thus I would not speculate, as the majority does, on what our position would be if one episode of drunken driving were to extend to Milwaukee. I simply join the majority in holding that, on the facts before us today, the offenses of which the defendant was convicted in New Mexico and Illinois were based on separate conduct and therefore do not violate the statutory prohibition against double jeopardy.