

FILED

Aug 19 2024, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

James E. Brabson,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

August 19, 2024

Court of Appeals Case No.
24A-CR-174

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-2011-F3-80
02D05-1705-F5-132

**Opinion by Judge Bradford**
Judges Crone and Tavitas concur.

**Bradford, Judge.**

# Case Summary

[1] James Brabson was on probation when, after an incident involving his romantic partner, Mollie Stoutermire, the State charged him with Level 3 felony criminal confinement, Level 5 felony carrying a handgun without a license, Level 6 felony criminal recklessness, and Level 6 felony pointing a firearm. The State later added Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"). After a jury trial, a jury found Brabson guilty of all charges but the criminal-confinement charge. At sentencing, the trial court vacated the carrying-a-handgun verdict on double-jeopardy grounds and imposed concurrent sentences of one year for each of the Level 6 felony convictions and ten years for the Level 4 felony conviction for an aggregate ten-year sentence. The trial court also concluded that Brabson had violated the conditions of his probation in a separate cause number, Cause Number 02D05-1705-F5-132 ("Cause No. F5-132"). Brabson argues that his convictions for criminal recklessness and pointing a firearm constitute a double-jeopardy violation and that the trial court improperly revoked his probation. We affirm.

# Facts and Procedural History

[2] In October of 2020, while he was on probation in Cause No. F5-132, Brabson became romantically involved with Stoutermire. One night that month, around midnight, Brabson walked Stoutermire home from work after her shift at a local liquor store in Fort Wayne. Once they arrived at Stoutermire's apartment,

Brabson received a telephone call and became emotional. After the telephone call, Brabson took out his handgun, put it beneath his chin, and pulled the trigger. The firearm failed to discharge, so Brabson put the barrel in his mouth and pulled the trigger, but the firearm again failed to discharge.

[3] At that point, Stoutermire got up from the couch and attempted to leave her apartment, but Brabson pointed his firearm in her direction and fired it. The weapon discharged and a bullet passed over Stoutermire's head and went into the wall behind her. Throughout the rest of that night and part of the next day, Brabson would not let Stoutermire leave the apartment. Brabson "had the gun pointed at [Stoutermire] the whole time" and told her that "he would kill [her] and himself" if she left. Tr. Vol. II p. 166. Shamea Green, Stoutermire's neighbor, heard the gunshot and called Stoutermire. Green noted that Stoutermire was "crying[,]" sounded "scared[,]" and that she had heard arguing. Tr. Vol. II pp. 192. Green later sent a text message to the landlord, Ronald Bailey, to inform him of what she had heard.

[4] Around 3:30 p.m. the following day, Brabson placed his handgun and some of his belongings in Stoutermire's closet and left to attend a physical-therapy appointment. By this time, Bailey had turned his attention to Green's text message and was waiting outside the apartment building for the police to arrive. As he was waiting, Bailey saw Brabson exit the apartment building. Within a few minutes of Brabson's departure, Bailey and police entered Stoutermire's apartment and Stoutermire turned over Brabson's handgun to police.

The State charged Brabson with Level 3 felony criminal confinement, Level 5 felony carrying a handgun without a license, Level 6 felony criminal recklessness, Level 6 felony pointing a firearm, and Level 4 felony possession of a firearm by an SVF. The State also petitioned the trial court to revoke Brabson's probation in Cause No. F5-132 based, in part, on Brabson's new offenses. On September 26 and 27, 2023, the trial court conducted a jury trial, after which the jury found Brabson guilty of Level 5 felony carrying a handgun without a license, Level 6 felony criminal recklessness, Level 6 felony pointing a firearm, and Level 4 felony possession of a handgun by an SVF. At the December of 2023 sentencing hearing, the trial court vacated Brabson's carrying-a-handgun conviction on double-jeopardy grounds and sentenced him to an aggregate ten years of incarceration. The trial court also found that Brabson had violated the conditions of his probation in Cause No. F5-132 and ordered that he serve the balance of his previously-suspended sentence.

## Discussion and Decision

### I. Brabson's conviction for Level 6 felony pointing a firearm did not constitute double jeopardy

Brabson argues that his conviction for pointing a firearm should be vacated because pointing a firearm, as charged here, is a lesser-included offense of criminal recklessness and that both convictions stem from the same act. For its part, the State argues that each conviction stems from a separate and distinct act.

[7] Whether two convictions constitute double jeopardy is a question of law that we review de novo. *Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020). Where a single act allegedly violates multiple statutes, we use a three-step analysis to determine whether the convictions constitute substantive double jeopardy. *Wadle*, 151 N.E.3d at 247. First, we review the statutes to assess whether "the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication[.]" *Id.* at 248. Second, if the statutes are unclear on that point, we determine whether one offense is included in the other, either inherently or as charged. *Id.* Third, if one of the offenses *is* included in another, then we consider the underlying facts to determine whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 249.

[8] As an initial matter, we note that the statutes at issue do not contemplate multiple punishments. Moreover, the State admits that "[p]ointing a firearm can be a lesser included offense of criminal recklessness" and asserts that "[t]he facts adduced at trial show[] that [Brabson had] committed two separate offenses, so his argument fails" on *Wadle*'s third step.[1] Appellee's Br. pp. 11, 12. Even assuming that pointing a firearm is included in criminal recklessness,

---

[1] In *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024), the Indiana Supreme Court clarified how to determine whether an offense is factually included in another; however, we need not engage in that analysis because the disposition of this issue rests on step three of the *Wadle* framework.

there is no double-jeopardy violation here because the actions leading to those convictions did not stem from a single act.

[9]     In step three, we ask whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249. "If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, 'included' in the other." *Id.* Brabson argues that "[w]hile this harrowing event took place over the course of roughly 14 to 15 hours, it was one single and continuous transaction by Brabson." Appellant's Br. p. 12. The State argues that, because the acts took place over the course of fifteen to sixteen hours, each conviction stems from separate and distinct acts. We agree with the State.

[10]    In *Thurman v. State*, 158 N.E.3d 372 (Ind. Ct. App. 2020), we addressed, among other things, whether two actions were so compressed in terms of time as to constitute a single transaction for double-jeopardy purposes. In that case, the prosecutor described that

> the gun immediately comes out and immediately pointed right at
> his face. And […] he didn't pull it out and point the gun and say,
> "Get out of there, I'm taking your SUV." He fired…. He runs to
> the front of the vehicle while [the victim is] trying to slide down
> as low as he can so he's not a dead man, and he fires again.

*Id.* at 379. Based upon the prosecutor's description and the record, we concluded that "Thurman's actions […] were so compressed in terms of time,

place, singleness of purpose, and continuity of action that they constitute one continuous transaction." *Id.* As a result, we vacated Thurman's convictions for pointing a firearm and criminal recklessness, concluding that those charges were included in his attempted murder charges. *Id.* at 380.

[11] Similarly, in *Starks v. State*, 210 N.E.3d 818, 823 (Ind. Ct. App. 2023), *trans. denied*, we concluded that convictions for criminal recklessness and pointing a firearm violated double jeopardy when the acts were sufficiently compressed in time and continuity of action. In that case, Starks had raised a gun, pointed it at her victim, and fired it in a single, continuous episode. *Id.* Consequently, we concluded that the record demonstrated that "Starks's actions of pointing and shooting the firearm were so continuous as to constitute a single transaction[.]" *Id.* (internal quotation omitted).

[12] Unlike the records in *Thurman* and *Starks*, the record here shows that the actions leading to Brabson's convictions for pointing a firearm and criminal recklessness are sufficiently separated in terms of time to constitute separate acts, which can support multiple convictions. After Brabson had attempted to commit suicide, Stoutermire tried to leave her apartment when Brabson pointed his weapon at her and fired, sending a bullet over her head and "recklessly […] creat[ing] a substantial risk of bodily injury[.]" Appellant's App. Vol. II p. 65. This act constituted Brabson's criminal recklessness offense. Over the following fifteen to sixteen hours, when Stoutermire attempted to leave, Brabson pointed his gun at her "everywhere [she] went[,]" constituting a distinct act that supports his pointing-a-firearm conviction. Tr. Vol. II p. 165.

[13] Our opinion in *Moore v. State*, 181 N.E.3d 442 (Ind. Ct. App. 2022) is helpful in determining when a defendant's actions are so compressed in terms of time and continuity of action that they constitute a single transaction. In that case, Moore was convicted of criminal recklessness and pointing a firearm after firing two gunshots in quick succession in the presence of three other persons. *Id*. at 444. Concluding that Moore's convictions for those charges had constituted double jeopardy, we reasoned that the "record indicate[d] that the two gunshots were fired in the same general direction and *without a meaningful break in time*." *Id*. at 448 (emphasis added). Conversely, the actions that led to Brabson's pointing-a-firearm and criminal-recklessness convictions occurred over a fifteen-hour period, during which there were, to say the least, myriad breaks in time long enough for Brabson to develop a new criminal intent to sustain his pointing-a-firearm conviction.

[14] Other states have considered the passage of time between acts and a defendant's forming a new criminal intent when evaluating whether two acts are separate and distinct for double-jeopardy purposes. While there is no absolute rule regarding the exact amount of time necessary between acts to consider them separate, temporal breaks and intervening acts enable the defendant to form a new criminal intent, rendering the acts separate and distinct. *See Gammage v. State*, 277 So. 3d 735, 742 (Fla. Dist. Ct. App. 2019); *see also State v. Cody M.*, 259 A.3d 576, 588 (Conn. 2020) (considering, among other things, "the amount of time separating the acts […] such that the defendant had the opportunity to reconsider his actions"); *see also People v. Dunnavan*, 886 N.E.2d 393, 399 (Ill.

App. Ct. 2008) (noting that "the time interval between the successive parts of the defendant's conduct" helps determine whether there are separate, punishable acts).

[15] Brabson's act of pointing his gun at Stoutermire over the course of fifteen to sixteen hours is a separate and distinct act from his initial act of pointing the gun at her and firing it. In other words, Brabson's actions were not "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249. The record supports a conclusion that the criminal-recklessness conviction and the pointing-a-firearm conviction constitute "two separate and distinct crimes[,]" sufficiently separated in time and continuity of action over the course of fifteen hours such that they did not constitute a single transaction for double-jeopardy purposes. *Id*.

## II. The trial court did not abuse its discretion when it imposed a probation-violation sanction

[16] Generally, "[p]robation is a matter of grace left to the trial court discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). We review appeals from trial courts' decisions on probation violations for an abuse of discretion. *Id*. In doing so, we will uphold a probation revocation if "there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation." *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999). "Probation revocation is a two-step process: first, the trial court must determine whether a

probation violation actually occurred, and second, whether the violation warrants revocation. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008).

[17] Notably, "[p]robation revocation implicates a defendant's liberty interest, which entitles him to some procedural due process." *Vernon v. State*, 903 N.E.2d 533, 536 (Ind. Ct. App. 2009), *trans. denied*. Our General Assembly "has codified the due process requirements in Indiana Code section 35-38-2-3 by requiring that an evidentiary hearing be held on the revocation and providing for confrontation and cross-examination of witnesses and representation by counsel." *Id*. at 537. "Whether a party was denied due process is a question of law that we review de novo." *Hilligoss v. State*, 45 N.E.3d 1228, 1230 (Ind. Ct. App. 2015).

[18] Brabson claims that the trial court improperly revoked his probation in Cause No. F5-132 without first determining that revocation was appropriate under the circumstances. He concedes that "the first step of the revocation process was likely satisfied." Appellant's Br. p. 14. Brabson focuses his argument on step two, claiming that the trial court provided "no determination that the violation warranted revocation of the probation" and that he "deserves an opportunity to be heard by the trial court as to whether there may be some future course of action that […] is more appropriate than immediate revocation." Appellant's Br. pp. 14, 15. We disagree.

[19] At the sentencing hearing, the trial court noted that a jury had convicted Brabson of three felonies. After imposing Brabson's sentence for those felonies,

the trial court noted that, by virtue of his new felony convictions, Brabson had violated the terms of his probation in Cause No. F5-132 and consequently found "the allegations in the verified petition for revocation of [Brabson's] probation [to] have been proven beyond a reasonable doubt[.]" Tr. Vol. III p. 116. We have previously held that trial courts considering a probation revocation can take notice of a conviction and sentence that the court had entered for the same defendant in the same hearing. *Moore v. State*, 102 N.E.3d 304, 309 (Ind. Ct. App. 2018).

[20] During the sentencing hearing, Brabson was represented by counsel and had the opportunity to speak prior to the imposition of his sentence. Moreover, the record does not suggest that Brabson had been unaware that the State had filed notice of a probation violation in Cause No. F5-132; in fact, at the start of the hearing, the State noted that "there's another case […] for revocation" in Cause No. F5-132. Tr. Vol. III p. 105. Additionally, because Brabson's probation violations arose from his commission of three new felonies, for which a jury had convicted him, "there was no witness to be cross-examined." *Moore*, 102 N.E.3d at 309. Under these circumstances, Brabson has not demonstrated that the trial court had revoked his probation in a manner that violated Indiana Code section 35-38-2-3 or that the trial court needed to make an additional record showing why revocation was proper.

[21] The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana