2023 IL App (1st) 211078
Opinion filed February 22, 2023

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CR 14597 |
| | ) | |
| DENNIS RUBIO, | ) | Honorable |
| | ) | Samuel J. Betar, III, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1   Following a bench trial, the trial court found defendant, Dennis Rubio, guilty of one count of creation of child pornography, one count of aggravated criminal sexual abuse, and one count of possession of child pornography. The court subsequently sentenced him to 15 years' imprisonment for creation of child pornography, 5 years' imprisonment for aggravated criminal sexual abuse, and 5 years' imprisonment for possession of child pornography, which, by law, had to be served consecutively for a total of 25 years' imprisonment. On appeal, defendant contends that his conviction for possession of child pornography must be vacated under the one-act, one-crime

doctrine because it was based on the same act as his conviction for creation of child pornography and, regardless, because possession of child pornography is a lesser-included offense of creation of child pornography. For the reasons that follow, we find that defendant's conviction for possession of child pornography does not violate the one-act, one-crime doctrine and affirm his conviction for the offense.

¶ 2                                    I. BACKGROUND

¶ 3     A grand jury indicted defendant with two counts of creation of child pornography (counts I and II), one count of aggravated criminal sexual abuse (count III) and eight counts of possession of child pornography (counts IV through XI). As relevant to this appeal, count I alleged that defendant:

> "film[ed], videotape[d] photograph[ed], or otherwise depict[ed] or portray[ed] by means of any similar visual medium or reproduction or depict[ed] by computer: to wit moving depiction by a computer, any child whom he knows or reasonably should know to be under the age of 13 of [*sic*] any person with a severe or profound intellectual disability where such child or person with a severe or profound intellectual disability is actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person or an animal, to wit: lg gsm_tp450 lg stylo3.zip/sdcard/dcim/camera/20180919_225048.mp4."

Count IV alleged that he:

> "with knoweldge [*sic*] of the nature or content thereof, possessed any film, videotape, photograph or other similar visual reproduction or depiction by computer, to wit: moving depiction by cellular phone, of any child whom he knew or reasonably should have known to be under the age of thurteen [*sic*] (13), where

such child is actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person or an animal, to wit: lg gsm_tp450 lg stylo3.zip/sdcard/dcim/camera/20180919_225048.mp4."

Both counts I and IV were based on the same video.

¶ 4 Following discovery and the parties' filing of various motions, the case proceeded to trial. On the day of defendant's scheduled trial, the State nol-prossed one count of creation of child pornography (count II) and one count of possession of child pornography (count V). Thereafter, defendant waived his right to a jury trial and elected to proceed by way of a bench trial.

¶ 5 At trial, the State's evidence revealed that, in the evening of September 19, 2018, defendant was hanging out in the garage of Ericka and Jason K., a married couple who lived in Mount Prospect, Illinois. Together, they had two children, including E.K., who was five years old. Defendant was a family friend. A little after 11 p.m., defendant went inside the house to use the bathroom. After a few minutes had elapsed, Ericka went into the house to look for defendant and noticed the bathroom light was off. Ericka walked into E.K.'s bedroom and observed defendant holding his cell phone in one hand while pulling down E.K.'s pants and underwear with his other hand. Upon witnessing defendant's actions, Ericka screamed at him and yelled at defendant to give her the phone. While Ericka tried to get the phone from defendant, he "kept pushing buttons." Ericka then pushed defendant out of E.K.'s bedroom, called for Jason, and relayed to him what had just occurred. During a scuffle between Jason and defendant, Jason recovered defendant's cell phone, and Ericka called the police. Approximately four minutes after Ericka called the police, responding officers arrived, and someone in the family gave an officer defendant's phone.

¶ 6 The next day, Sergeant Scott Filipeck of the Mount Prospect Police Department, who testified at trial as a cell phone forensics expert, investigated the incident. Sergeant Filipeck spoke

with defendant at the police station, and he provided Sergeant Filipeck consent to search his cell phone. While searching the phone, Sergeant Filipeck found video related to the incident. Thereafter, he obtained a search warrant to search the remaining contents of the phone. During the second search, Sergeant Filipeck found three videos that were created the night of the incident. Sergeant Filipeck determined that the videos were created that night based on the metadata embedded in the video as well as the file path name. Using this information, Sergeant Filipeck concluded that the first video was created at 10:50 and 48 seconds in the evening, the second video was created at 10:51 and 50 seconds in the evening. and the third video was created at 10:51 and 55 seconds in the evening. During trial, all three videos were published for the trial court and entered into evidence.

¶ 7    The first video, which formed the basis for counts I and IV, was 46 seconds long. In the video, defendant removed a blanket from E.K. while she was sleeping on her stomach, pushed her shirt up her back and pulled down her sweatpants and underwear, which exposed her buttocks. Defendant's fingers then ran down E.K.'s exposed buttocks crack. Later in the video, defendant used his fingers to touch E.K.'s exposed buttocks twice more. The second video was two seconds long and depicted the bedding in E.K.'s bedroom. The third video was 11 seconds long, and depicted defendant pulling down E.K.'s pants and underwear to expose her buttocks. As defendant was doing this, a female voice could be heard saying "[w]hat are you doing?" The remainder of the video contained erratic movements and the same female voice asking "[w]hat are you f*** doing, dude?" In addition to finding those three videos on defendant's phone, Sergeant Filipeck recovered several other photographs on the phone that he believed were child pornography, including some taken earlier that month of another minor. The photographs taken earlier in September 2018 formed the bases for counts VI through XI.

¶ 8    After the incident, a nurse administered a criminal sexual assault kit on E.K., which included collecting anal swabs. A forensic scientist analyzed the kit and determined that amylase, a bodily fluid found in its highest concentration in saliva was detected on the anal swabs. Evidence, however, revealed that amylase was also found in other bodily fluids.

¶ 9    Defendant did not testify at trial, and he did not present any evidence on his behalf. Following the parties' closing arguments, the trial court found defendant guilty of count I (creation of child pornography), count III (aggravated criminal sexual abuse), count IV (possession of child pornography) and counts VI through XI (possession of child pornography). As relevant to counts I, III, and IV—the counts related to E.K.—the court found that defendant engaged in sexual conduct with her by "touch[ing] [her] buttocks on at least three occasions." Thereafter, defendant filed a combined motion to reconsider and for a new trial. The court denied the combined motion as it related to counts I, III, and IV. The court, however, granted the motion to reconsider on counts VI through XI and entered findings of not guilty on those counts.

¶ 10    The case proceeded to sentencing on counts I, II, and IV. During defendant's sentencing hearing, his counsel requested that the trial court merge counts I and IV under the one-act, one-crime doctrine. The court denied the request, relying on the decision of *People v. Reyes*, 2020 IL App (2d) 170379. The court subsequently sentenced defendant to 15 years' imprisonment on count I (creation of child pornography), 5 years' imprisonment on count III (aggravated criminal sexual abuse) and 5 years' imprisonment on count IV (possession of child pornography), which, by law, had to be served consecutively for a total of 25 years' imprisonment. After sentencing defendant, defense counsel made an unsuccessful oral motion to reconsider the sentence, a procedure to which the State did not object. Defendant appealed.

¶ 11                                    II. ANALYSIS

¶ 12 Defendant contends that his conviction for possession of child pornography (count IV) must be vacated under the one-act, one-crime doctrine where his conviction for creation of child pornography (count I) arose out of the same act, or, in the alternative, because possession of child pornography is a lesser-included offense of creation of child pornography.

¶ 13 Initially, the State posits that defendant forfeited review of his one-act, one-crime doctrine claim because, although he raised the issue at sentencing, he did not file a written postsentencing motion. Generally, "to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, "if defendants orally move to reduce their sentences without objection to this procedure by the State, the reviewing court may address such issues upon appeal despite defendants' failure to file a written postsentencing motion." *People v. Shields*, 298 Ill. App. 3d 943, 950-51 (1998); see also *People v. Davis*, 356 Ill. App. 3d 725, 731 (2005) (following *Shields*).

¶ 14 Such is the case here. During defendant's sentencing hearing, defense counsel unsuccessfully requested the trial court merge counts I and IV under the one-act, one-crime doctrine. Following the court's announcement of defendant's sentence, defense counsel made an oral motion to reconsider the sentence, a procedure to which the State did not object. Because defendant raised the one-act, one-crime doctrine issue at sentencing and the State did not object to defense counsel's oral motion to reconsider the sentence, we may address defendant's one-act, one-crime doctrine claim on appeal despite defendant's failure to file a written postsentencing motion. See *Davis*, 356 Ill. App. 3d at 731; *Shields*, 298 Ill. App. 3d at 950-51.

¶ 15 In *People v. King*, 66 Ill. 2d 551 (1977), our supreme court held that "a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v. Coats*, 2018 IL 121926, ¶ 11 (citing *King*, 66 Ill. 2d at 566). The

prohibition became known as the one-act, one-crime doctrine. *Id.* Whether the doctrine has been violated is a question of law we review *de novo. Id.* ¶ 12. To determine if a violation occurred, we utilize a two-step analysis. *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 12. First, we determine whether the defendant's conduct involved a single act or multiple acts. *Id.* If the defendant's conduct involved a single act, multiple convictions are improper. *Id.* Conversely, if we conclude that the defendant's conduct involved multiple acts, we must proceed to the second step of the analysis and determine whether any of the offenses are lesser-included offenses. *Id.* If one of the offenses is a lesser-included offense of the other, multiple convictions are improper. *Id.*

¶ 16    An " '[a]ct' " is defined as "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. In determining whether the defendant's conduct consisted of a single act or multiple acts, this court has used several factors: (1) whether there was an intervening event; (2) how much time elapsed between successive parts of the defendant's conduct; (3) whether the identity of the victim was the same; (4) how similar the defendant's conduct was; (5) whether the location of the conduct remained the same; and (6) the intent of the State, as evidenced by the charging instrument. *People v. Baity*, 125 Ill. App. 3d 50, 52-54 (1984); see also *People v. Dunnavan*, 381 Ill. App. 3d 514, 519 (2008); *People v. Cobern*, 236 Ill. App. 3d 300, 303 (1992); *People v. Crum*, 183 Ill. App. 3d 473, 490 (1989). Although "the *King* doctrine [is] the guiding principle" on what constitutes an act, our supreme court has "acknowledge[d] the utility of the six-factor test [of *Baity*] in many instances." *People v. Sienkiewicz*, 208 Ill. 2d 1, 8 (2003).

¶ 17                              A. Single Act or Multiple Acts

¶ 18    Based on the principles of the one-act, one-crime doctrine, defendant argues that his convictions for creation of child pornography (count I) and possession of child pornography (count

IV) arose out of the same physical act of using his cell phone to record an instance of sexual conduct with E.K. in her bedroom. According to defendant, after recording the video, he necessarily possessed the video concurrently on his cell phone. Meanwhile, the State posits that defendant's convictions were not based upon the same physical act, as his act of creation and his act of possession were separate physical acts despite their temporal and spatial proximity. The State also asserts that defendant committed several separate acts of sexual conduct within the single video that formed the basis for counts I and IV. In supporting the latter argument, the State relies on *Reyes*, 2020 IL App (2d) 170379, the case the trial court relied on in denying defendant's request for a merger of counts I and IV under the one-act, one-crime doctrine.

¶ 19     In *Reyes*, 2020 IL App (2d) 170379, ¶¶ 2, 10, 84, the defendant was charged with various offenses, including two counts of creation of child pornography based on one, three-minute long video he took with his cell phone. The first count of child pornography was based on the video showing the defendant's penis in contact with the minor's vagina, and the second count was based on the video showing the minor's vagina unclothed. *Id.* ¶ 84. During the defendant's bench trial, the State introduced the video recovered from his cell phone as well as still photographs from that video showing the minor's vagina and his penis in contact with the minor's vagina. *Id.* ¶ 38. After trial, the trial court found the defendant guilty of various offenses, including the two offenses for creation of child pornography. *Id.* ¶ 43. On appeal, the defendant contended that one of those two convictions had to be vacated under the one-act, one-crime doctrine. *Id.* ¶ 45. In rejecting that claim, the appellate court observed that, "while there is certainly a common act—recording—[the] defendant produced two distinct pornographic images by recording the victim's vagina and a penis touching the victim's vagina." *Id.* ¶ 86. Thus, "[e]ither act, standing alone, would support a conviction." *Id.* And merely because the acts were closely related did not preclude two convictions.

*Id.* Consequently, the appellate court affirmed the defendant's two convictions for creation of child pornography. *Id.* ¶¶ 87, 89.

¶ 20    However, we do not find *Reyes* analogous to the instant case. First, in *Reyes*, the defendant was charged with two counts of creation of child pornography whereas, in the instant case, defendant was charged with one count of creation of child pornography and one count of possession of child pornography based on the same video. Second, in *Reyes*, the charging instrument clearly delineated what acts of the defendant formed the basis for his two counts of creation of child pornography whereas, in the instant case, the indictment broadly referenced the entire video defendant created and never specifically delineated any specific acts therein.

¶ 21    With the inapplicability of *Reyes* determined, we turn to two more similar cases, *Dunnavan*, 381 Ill. App. 3d 514, and *People v. Flaar*, 366 Ill. App. 3d 685 (2006). Although both cases involved double jeopardy claims, "[o]ur supreme court defines an 'act' in the context of double jeopardy the same as it does in the context of the one-act, one-crime doctrine." *Id.* at 688 (citing *Sienkiewicz*, 208 Ill. 2d at 7 (citing *King*, 66 Ill. 2d 551)).

¶ 22    In *Dunnavan*, 381 Ill. App. 3d at 515, the defendant was charged with sexual exploitation (possession of child pornography) in New Mexico based on him possessing a videotape depicting him engaged in sexual activity with a minor. He later pled no contest to the charge and was sentenced in New Mexico. Shortly thereafter, the defendant was charged in Illinois with creation of child pornography based on the same videotape. *Id.* The defendant moved to dismiss the charge based on double jeopardy principles, arguing that, when he made the videotape, he necessarily had to possess it. *Id.* The trial court denied the defendant's motion, and following his trial, he was found guilty of creation of child pornography. *Id.* at 516. Thereafter, he appealed his conviction based on double jeopardy principles. *Id.*

¶ 23    On appeal, this court initially observed that the preliminary question for a double jeopardy analysis was whether the New Mexico and Illinois prosecutions were based on the same act. *Id.* at 517-19. The court noted the definition of an act, as stated in *King*, and then utilized the six-factor test of *Baity* to determine whether the defendant's conduct constituted one or more acts. *Id.* at 519. First, the court observed that the defendant was charged with possessing the videotape over a year after he created it, and during that time period, he left his job in Illinois and moved to New Mexico. *Id.* at 519-20. As such, not only did an intervening event exist, but there was a significant amount of time between the creation of the video and his possession of it. *Id.* Second, the court noted that the defendant created the video while located in Illinois yet possessed the video in New Mexico, which "strongly support[ed] the conclusion that the offenses were founded on different acts." *Id.* at 520. Given this, the court found that the first, second, and fifth *Baity* factors favored the conclusion that the offenses were predicated on different acts. *Id.* at 519. The court next determined that the remaining factors of the *Baity* test were inconclusive. *Id.* at 520. "Given the long time between the creation of the child pornography and defendant's being found with it in his possession, during which time defendant moved to another state, as well as the physical distance separating the events," the court held that the two offenses were based on different acts and double jeopardy did not bar his Illinois conviction. *Id.*

¶ 24    In *Flaar*, 366 Ill. App. 3d at 686, in June 2003, the defendant sent pornographic images of children via e-mail from his home in Kendall County to an undercover police officer in Cook County. Over a month later, the police executed a search warrant on defendant, resulting in him being charged with four counts of possession of child pornography in Kendall County. *Id.* A month after that, the defendant was charged with three counts of dissemination of child pornography in Cook County. *Id.* The defendant pled guilty to the possession charges in Kendall County and then

sought to dismiss the charges in Cook County, in part, based on double jeopardy principles. *Id.* at 687. The trial court, however, denied his motion, and the defendant appealed. *Id.* On appeal, the appellate court asserted that the critical question was "whether [the] defendant's act of e-mailing a pornographic image to Cook County established a separate and distinct possession from the possession [he] pled guilty to in Kendall County." *Id.* at 687-88. After noting the definition of an act, as stated in *King*, the court concluded that the defendant's conduct constituted two separate acts. *Id.* at 688-89. According to the court, the defendant's first act was transferring a copy of an image located on his computer to the officer in Cook County through e-mail. *Id.* at 689. The defendant's second act was retaining a copy of the original image on his computer for over a month. *Id.* As such, "both acts of possession were separate and distinct temporally and physically," as "[t]here was a possession attendant to defendant's original dissemination, and there was a separate possession offense occurring over a month later." *Id.* And it was inconsequential that "the images constituting these separate possessions were identical in appearance." *Id.* What was consequential was the time period that had passed between the dissemination and subsequent possession, which "indicate[d] a conscious decision to commit to a separate criminal act, *i.e.*, a new volitional departure toward a different criminal end." *Id.* As a result, the appellate court held that the Cook County prosecution did not violate the prohibition against double jeopardy. *Id.*

¶ 25    Applying the *Baity* factors to the instant case, many of them indisputably favor the finding of a single act. First, E.K. was the victim throughout, and second, the location of defendant's conduct never changed, as he was always in E.K.'s bedroom. Third, although defendant's conduct in the video was not identical, it was similar throughout in that he made contact with E.K.'s clothing and buttocks. However, the fourth factor—the intent of the State, as evidenced by the charging instrument—is inconclusive. Under the facts of this case, count I required the State to

prove that defendant filmed any child whom he knew or reasonably should have known to be under the age of 13 where such child is "actually *** engaged in any act of sexual penetration or sexual conduct with any person." See 720 ILCS 5/11-20.1(a)(1)(i), (c-5) (West 2018). Count IV required the State to prove that defendant "with knowledge of the nature or content thereof, possesse[d] any film, videotape, *** or other similar visual reproduction" of any child whom he knew or reasonably should have known to be under the age of 13 where such child is "actually *** engaged in any act of sexual penetration or sexual conduct with any person." See *id.* § 11-20.1(a)(6), (a)(1)(i), (c-5). Based on the language of the charging instrument, counts I and IV did not assert what specific act of sexual conduct defendant allegedly performed on E.K., showing the State's intent to charge defendant's conduct as a single act. However, during the State's closing argument in support of convictions on counts I and IV, it highlighted various acts of sexual conduct defendant committed on E.K., including defendant running his thumb down her buttocks and touching her clothing. See *People v. Crespo*, 203 Ill. 2d 335, 343-44 (2001) (considering "the State's theory at trial, as shown by its argument to the jury" in whether the State intended to charge the defendant's conduct as a single act).

¶ 26    Turning to the remaining factors of whether there was an intervening event and how much time elapsed between successive parts of the defendant's conduct. Based on the data associated with the videos defendant took on his cell phone, he recorded the first video at 10:50 and 48 seconds in the evening. That video was approximately 46 seconds long, meaning defendant stopped recording the video at 10:51 and 34 seconds in the evening. Sixteen seconds later, defendant recorded the second video, a video that lasted two seconds, meaning defendant stopped recording the video at 10:51 and 52 seconds in the evening. Three second later, defendant recorded the final video, which lasted approximately 11 seconds and during which he was confronted by

Ericka. Following defendant being confronted by Ericka and her attempt to grab defendant's phone, he "kept pushing buttons" on the phone. But then, he became involved in a quarrel with Ericka and then Jason, during which Jason recovered defendant's phone. From that point on, defendant never regained possession of his phone. Incontrovertibly, not much time elapsed between defendant's creation, *i.e.*, recording, of the video on his cell phone and his possession of that video until Jason confiscated it and turned it over to the police. And so we recognize the timeline of events in this case was significantly more compressed than in *Dunnavan*, where more than a year had elapsed between a defendant's creation and possession of child pornography, or *Flaar*, where more than a month had elapsed between a defendant's dissemination and possession of child pornography.

¶ 27 However, like *Dunnavan*, there were intervening events in the instant case. Notably, after defendant stopped recording the first video, he apparently took a 16-second break and began recording another video. Thereafter, he took another quick break and began recording a third video. These intervening events support the conclusion that defendant's conduct constituted multiple acts. First, defendant used his cell phone to record a video, necessitating in some manner that he initiated the recording function on his phone. And second, defendant retained possession of that video after he created it beyond the possession attendant to its creation. To be sure, after ending the recording of the first video, defendant made no effort to delete the video. He did not have a moment of realization that what he had just done was immoral and criminal and attempt to rid himself of that video. Instead, defendant continued on and created another video. These actions demonstrate his intent to retain possession of the first possession and "indicate[ ] a conscious decision to commit to a separate criminal act, *i.e.*, a new volitional departure toward a different criminal end." *Flaar*, 366 Ill. App. 3d at 689. Moreover, after recording the second video, defendant again made no

- 13 -

effort to delete the first video. Rather, he kept possession of it and proceeded to record a third video. Although defendant claims that his act of pushing the buttons on the cell phone when confronted by Ericka was possibly an attempt to delete one, or all, of the videos, based on the circumstances, his act could only be construed as an attempt to destroy evidence of his wrongdoing rather than having an epiphany that he made a mistake. Otherwise, he would have deleted, or attempted to delete, the videos before being confronted by Ericka, not after being confronted.

¶ 28    While many of the *Baity* factors favor the finding of a single act, and the factors are undoubtedly helpful, our supreme court has "caution[ed] that a court must not lose sight of the forest for the trees" as "[t]he definition of an 'act' under the *King* doctrine remains simply what this court stated in *King*: 'any overt or outward manifestation which will support a different offense.' " *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996) (quoting *King*, 66 Ill. 2d at 566). And here, defendant's decision to film additional videos "indicate[d] a conscious decision to commit to a separate criminal act, *i.e.*, a new volitional departure toward a different criminal end." *Flaar*, 366 Ill. App. 3d at 689. In other words, at the moment defendant stopped recording the first video, his possession of it was attendant to his creation of it. But he retained that video and went on to record additional videos of E.K. Undoubtedly, his acts were proximate in both time and location, and in order to possess the video, he had to first create the video. However, "separate acts do not become one act merely because of proximity in time and location" and "the interrelationship of separate acts does not prevent multiple convictions." *People v. Marzonie*, 2018 IL App (4th) 160107, ¶ 40. The lapse of time in this case, even if brief, coupled with the intervening events of additional recordings, provided sufficient time to reflect between creation and retention such that both acts would constitute criminal conduct. See *King*, 66 Ill. 2d at 566 (concluding that an " '[a]ct' " is "any overt or outward manifestation which will support a different offense").

¶ 29    Nevertheless, defendant highlights Justice Gilleran Johnson's special concurrence in *Dunnavan*, 381 Ill. App. 3d at 527 (Gilleran Johnson, J., specially concurring), where she stated: "Had the defendant been arrested for possessing the video at the same time that it was made, his argument would have some force: in that situation, he would be correct that his creation of the video necessitated his simultaneous possession of it ***." Initially, we note that, while special concurrences are persuasive, they are not binding authority. See *People v. Holt*, 372 Ill. App. 3d 650, 653 (2007). But Justice Gilleran Johnson's special concurrence does not speak to the situation involved in our case. In her hypothetical, the police caught the defendant in the act, so to speak, meaning there was no time for reflection between the creation of the video and the retention, *i.e.*, possession, of the video. In contrast to such a situation, the facts of the instant case demonstrate that defendant had time to reflect between the creation of the video and his retention, *i.e.*, possession, of that video because he went on to take additional videos of E.K. Had the third video, in which Ericka interrupted defendant, formed the basis for the creation and possession charges and convictions, defendant might have a persuasive argument. But the third video did not form the basis for counts I and IV.

¶ 30    Still, defendant likens his creation and unavoidable possession of child pornography to situations in which defendants manufacture contraband and necessarily possess that contraband. Defendant highlights *People v. Wagers*, 255 Ill. App. 3d 497 (1994) and argues that, in those situations, a conviction for manufacture of contraband precludes a conviction for possession of the same contraband. In that case, during the execution of a search warrant of a garage, the police found 57 marijuana plants and a canvas tarp containing marijuana. *Id.* at 500. As a result, two defendants were charged with unlawful production of cannabis sativa plants, unlawful possession of cannabis, unlawful manufacture of cannabis, and unlawful possession of cannabis with intent

to deliver. *Id.* at 498. Following trial, both defendants were convicted of all four offenses. *Id.* at 503. On appeal, they contended, and the State conceded, that the trial court improperly convicted them of unlawful possession of cannabis and unlawful possession of cannabis with intent to deliver. *Id.* In analyzing the claim of error, the appellate court observed "that there were two separate groupings of marijuana constituting two separate acts: (1) the marijuana in the garage and (2) the marijuana being grown." *Id.* In turn, these two acts supported both defendants' convictions for unlawful production of cannabis and unlawful manufacture of cannabis. *Id.* However, the court asserted that "the charges of unlawful possession of cannabis and unlawful possession of cannabis with the intent to deliver could only be predicated on these same two acts which support the convictions for unlawful production of cannabis and unlawful manufacture of cannabis." *Id.* Consequently, the defendants' convictions for unlawful possession of cannabis and unlawful possession of cannabis with intent to deliver had to be vacated. *Id.*

¶ 31    In *Wagers*, the defendants' possession of cannabis and possession of cannabis with intent to deliver occurred simultaneously with their production of cannabis sativa plants and manufacturing of cannabis just like the situation contemplated by Justice Gilleran Johnson's special concurrence in *Dunnavan*. In fact, in her special concurrence, she compared the circumstances of *Wagers* to her hypothetical where the defendant was arrested for possessing child pornography at the same time that it was created and noted "the production of the marijuana in *Wagers* encompassed the simultaneous possession of it." *Dunnavan*, 381 Ill. App. 3d at 527 (Gilleran Johnson, J., specially concurring). In contrast to *Wagers* and Justice Gilleran Johnson's hypothetical situation, which we have already discussed, defendant's possession of child pornography in the instant case was separate and distinct from his creation of child pornography because he created the video that formed the basis for counts I and IV and then created two

additional videos. In doing so, while there was a possession of child pornography attendant to his creation of child pornography, there was nevertheless sufficient time to reflect between his creation and his retention, *i.e.*, possession, of the video such that both acts would constitute criminal conduct. Consequently, defendant's conduct consisted of multiple acts.

¶ 32                                    B. Lesser-Included Offense

¶ 33     Having concluded that defendant's conduct involved multiple acts, we must proceed to the second step of the one-act, one-crime doctrine analysis and determine whether possession of child pornography is a lesser-included offense of creation of child pornography. See *Coats*, 2018 IL 121926, ¶ 12. In doing so, we utilize the abstract-elements approach. *Id.* ¶ 30. Under this approach, we must examine the statutory elements of the two offenses in question. *Reveles-Cordova*, 2020 IL 124797, ¶ 13. "If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *People v. Miller*, 238 Ill. 2d 161, 166 (2010). This approach "is the strictest approach in the sense that it is formulaic and rigid, and considers 'solely theoretical or practical impossibility.' " *Id.* (quoting *People v. Novak*, 163 Ill. 2d 93, 106 (1994)). Stated otherwise, "it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Reveles-Cordova*, 2020 IL 124797, ¶ 13.

¶ 34     Turning to the elements of the offenses, we first look at count I, which charged defendant with creation of child pornography under sections 11-20.1(a)(1)(i) and (c-5) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-20.1(a)(1)(i), (c-5) (West 2018)). In order to convict a defendant under these subsections of the child pornography statute, the State has to prove that he (1) "film[ed], videotape[d], photograph[ed], or otherwise depict[ed] or portray[ed] by means of any similar visual medium or reproduction or depict[ed] by computer" (2) any child whom he

knows or reasonably should know to be under the age of 13 or any person with a severe or profound intellectual disability (3) where such child or person with a severe or profound intellectual disability is "actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person or animal." *Id.* Count IV charged defendant with possession of child pornography under sections 11-20.1(a)(6) and (c-5) of the Code (*id.* § 11-20.1(a)(6), (c-5)). In order to convict a defendant under these subsections of the child pornography statute, the State has to prove that he (1) possessed (2) with knowledge of the nature or content thereof (3) any film, videotape, photograph, or other similar visual reproduction or depiction by computer (4) of any child or person with a severe or profound intellectual disability whom the person knows or reasonably should know to be under the age of 13 or to be a person with a severe or profound intellectual disability (5) to be actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person or animal. *Id.*

¶ 35    When comparing the offenses, both possession of child pornography and creation of child pornography contain different elements. Axiomatically, the offense of possession of child pornography requires the defendant's possession, whereas the offense of creation of child pornography does not. And the offense of creation of child pornography requires the defendant use some visual medium to depict the child pornography, whereas the offense of possession of child pornography does not. As such, someone could commit the offense of creation of child pornography without necessarily committing the offense of possession of child pornography. See *Reveles-Cordova*, 2020 IL 124797, ¶ 13 (in order for an offense to be considered a lesser-included offense, "it must be impossible to commit the greater offense without necessarily committing the lesser offense").

¶ 36 Cases from other jurisdictions addressing similar facts have reached the same conclusion. For instance, in *United States v. Gomez-Diaz*, 911 F.3d 931, 934 (8th Cir. 2018), the Eighth Circuit Court of Appeals observed that "[p]ossession of child pornography includes at least one element that production of child pornography does not: possession." Therefore, the court concluded that possession of child pornography is not a lesser-included offense of production of child pornography. *Id.* Similarly, in *State v. Foster*, 591 S.W.3d 518, 521 (Mo. Ct. App. 2019), the Missouri Court of Appeals addressed whether possession of child pornography is a lesser-included offense of sexual exploitation of a minor. For the latter offense, the State had to establish that the defendant "created child pornography or obscene material with a minor." *Id.* at 523. The court observed that "[p]roof of dominion or control over [child pornography]," *i.e.* possession, "is not an element of sexual exploitation of a minor and proof of creation is not an element of possession of child pornography." *Id.* As such, the court concluded "that possession of child pornography is not a lesser-included offense of sexual exploitation of a minor." *Id.*

¶ 37 Nevertheless, in supporting his argument that possession of child pornography is a lesser-included offense of creation of child pornography, defendant cites *Dunnavan*, 381 Ill. App. 3d 514, and *Flaar*, 366 Ill. App. 3d 685. In *Dunnavan*, 381 Ill. App. 3d at 520, this court determined that, because the defendant's conviction of sexual exploitation (possession of child pornography) in New Mexico was based on a different act than his conviction of creation of child pornography in Illinois, his Illinois prosecution was not barred by double jeopardy principles. Given this finding, this court did not need to "consider whether the New Mexico offense is a lesser-included offense of the Illinois offense of child pornography." *Id.* at 520-21. Because *Dunnavan* did not proceed into a lesser-included offense analysis, defendant's reliance on the decision is inapposite.

¶ 38    In *Flaar*, 366 Ill. App. 3d at 687, this court observed that neither the State nor the defendant contested that possession of child pornography was a lesser-included offense of dissemination of child pornography. To this end, the court determined that the critical issue on appeal was whether the "defendant's act of e-mailing a pornographic image to Cook County" and allegedly committing the offense of dissemination of child pornography "established a separate and distinct possession from the possession [he] pled guilty to in Kendall County." *Id.* at 687-88. Because *Flaar* involved the offense of dissemination of child pornography, and not creation of child pornography—the offense at issue in this case—we likewise find defendant's reliance on the decision inapposite. Because both possession of child pornography and creation of child pornography contain different elements, and it is possible to commit the greater offense without necessarily committing the lesser offense, possession of child pornography is not a lesser-included offense of creation of child pornography. Accordingly, defendant's convictions for both offenses can stand under *King*. See *Miller*, 238 Ill. 2d at 176 (where the defendant's conviction for retail theft was not a lesser-included offense of burglary, both convictions could stand under *King*).

¶ 39                                      III. CONCLUSION

¶ 40    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41    Affirmed.

## *People v. Rubio*, 2023 IL App (1st) 211078

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-14597; the Hon. Samuel J. Betar III, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Matthew M. Daniels, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Joseph Alexander, and Kimberly C. Reeve, Assistant State's Attorneys, of counsel), for the People. |